No. 35,306

Clyde Baker, *Appellee*, v. The Continental Insurance Company, *Appellant*.

(122 P. 2d 710)

Opinion filed March 7, 1942.

*Albert Faulconer, Kirke W. Dale* and *Donald Hickman,* all of Arkansas City, were on the briefs for the appellant.

*W. L. Cunningham, D. Arthur Walker* and *William E. Cunningham,* all of Arkansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: Plaintiff Clyde Baker recovered judgment against the defendant insurance company for loss and damage sustained in the alleged theft of his automobile.

Plaintiff owned a two-door Ford sedan which was covered by a policy of insurance issued by defendant and which insured plaintiff against loss or damage to his automobile through "theft, robbery or pilferage."

The pertinent facts were developed without material dispute. Plaintiff and his family resided a short distance north of Arkansas City, which is situated near the Kansas-Oklahoma state line. On Sunday morning, June 4, 1939, his wife and two small daughters set out for church and Sunday school in the Baker automobile. One Claude Moore, a boy of juvenile-court age, rode along with them. When they reached the church Mrs. Baker left the ignition key in

the car. Young Moore went into the church at one door and out at another and got into the Baker car and drove it away. He picked up two other boys and they·rode down into Oklahoma a few miles, thence north through Arkansas City for some distance, and stopped for a time. Then one of Moore's companions took the wheel and on their way back to town the car left the highway and was wrecked.

Plaintiff's demand on defendant to be reimbursed for the loss and damage was rejected. Hence this action. The jury's verdict in favor of plaintiff was for $430 and interest. Answers to two special questions were also returned by the jury:

"1. Q. For what purpose do you find that the boy, Claude Moore, took the Baker car from at or near the Methodist church on or about June 4, 1939? A. For his own personal use for as long as he saw fit.

"2. Q. Did the boy, Claude Moore, at any time while the Baker car was in his possession on June 4, 1939, intend to permanently appropriate the car to his own use? A. No."

Judgment was entered on the general verdict and defendant appeals, urging several errors which its counsel summarize into a single question of law, viz.: Did the taking and use of appellee's automobile under the admitted facts in the case constitute a theft of the car within the meaning of the insurance policy, in view of the specific finding of the jury that Claude Moore did not intend to permanently appropriate the car to his own use?

Defendant's counsel take the negative side of this question and direct our attention to a provision of the crimes act, G. S. 1935, 21-544, which declares it to be a misdemeanor to take away or use any automobile, "with intent to deprive the owner of the temporary use thereof, against the owner's will, but not with the intent of stealing or converting the same permanently to his own use." By another provision of the same statute the felonious stealing of an automobile is declared to be grand larceny and punishable by imprisonment in the penitentiary.

It is argued that since the legislature itself has drawn this distinction between the larceny of an automobile and the mere trespass of temporarily depriving the owner of its use, the obligation of the insurance policy should be interpreted according to these provisions of the crimes act. This court has not hitherto interpreted the terms of a civil contract so strictly unless the text compelled such construction. In *Motor Co. v. Insurance Co.*, 111 Kan. 225, 207 Pac. 205, 24 A. L. R. 736, we held that where the owner of an

automobile was swindled out of its possession, the lures and wiles of the swindler by which he accomplished that object constituted a species of theft for which the car owner could recover on a policy insuring him against theft, robbery and pilferage. In the opinion it was said:

"It may well be that in a prosecution for the crime narrated the strict rules of our criminal law would require that the swindler be charged with the latter offense [obtaining property by false pretenses] rather than the former [grand larceny]. But it cannot be said that the contract of insurance was drawn to fit the narrow limitations of the Kansas crimes act," (citing and quoting from the *Grain & Supply Co. v. Casualty Co.*, 108 Kan. 379, 382, 195 Pac. 978).

The authorities in other jurisdictions are divided on the question at bar. Speaking generally, the earlier decisions held that the term "theft" in an insurance policy was synonymous with larceny, and recovery was usually denied to the holder of a policy of insurance for the theft of his automobile unless the technical elements of the crime of larceny were established. (Annotations in 14 A. L. R. 215, 19 id. 171.)

This court is committed to the doctrine that contracts of insurance should be liberally construed in favor of the insured and strictly as against the insurer who had the privilege of formulating the terms of the contract and had its own experts for their draftsmanship. (*Grain & Supply Co. v. Casualty Co.*, 108 Kan. 379, 195 Pac. 978, 16 A. L. R. 1488.) See, also, *Bankers Mortgage Co. v. Dole*, 130 Kan. 367, 372, 286 Pac. 258; *Tripp v. United States Fire Ins. Co.*, 141 Kan. 897, 900, 44 P. 2d 236.

There is a growing trend in the more recent decisions to rule more strictly against insurance companies on the "theft" provisions of their policies. Thus in *Pennsylvania Indem. Fire Corp. v. Aldridge*, 73 App. D. C. 161, 117 F. 2d 774, 133 A. L. R. 914, it was held that a policy insuring an automobile against "theft" was broad enough to cover the act of a boy, employed to clean and simonize a car; who, with other boys, took it for a ride, and accidently wrecked it on the way back, although the boy had no intent to permanently deprive the owner of the car, and although in a criminal prosecution against him the boy was convicted under a statute which made the temporary appropriation of a car without the consent of the owner a distinct offense from that of larceny. In the opinion the court took full cognizance of the strict rule of some courts which holds that there can be no recovery where the person taking the car had no intention to permanently deprive the owner of it, but said:

"To permit such a result would be to permit insurance companies, by using the word theft, to evade liability in many cases in which, under prevailing laws, they would be liable if they had used the word larceny. This is certainly not the result intended by the applicable rule. . . . It is apparent that the word theft is reasonably susceptible of the construction contended for by appellee and given by the lower court." (p. 778.)

In *Fire Ins. Co. v. House*, 163 Tenn. 585, 45 S. W. 2d 55, it was held that a recovery could be had on a policy insuring an automobile against theft where the owner parked it near his residence, and a drunken man got into the car and drove it away and wrecked it. The trespasser had no intention of permanently depriving the owner of his property. The pertinent syllabus reads:

"A policy insuring the owner against 'theft, robbery or pilferage' of his automobile is applicable where one drove the car away and damaged it by running into a tree, notwithstanding that the circumstances indicated that the person took the car for temporary use and with the intention of returning it." (Syl. ¶ 5.)

See, also, *Nugent v. Union Auto Ins. Co.*, 140 Ore. 61, 13 P. 2d 343.

In *Employers' Fire Ins. Co. v. Consolidated Garage*, 85 Ind. App. 674, 155 N. E. 533, the Indiana Appellate Court held that the owner of an automobile was protected by his insurance policy against theft of the car where an employee of a garage in which it was stored took it out without the owner's consent and wrecked it on a pleasure trip. This ruling, however, is at variance with later decisions of the Indiana supreme court as shown in a brief annotated article in Vol. 16 of the Indiana Law Journal at pages 593, 594. It reads:

"In two recent cases an automobile was taken without the consent of the owner by a person in temporary possession, but without the intent to keep it permanently. Each automobile was insured against theft. The Indiana supreme court denied recovery on the insurance policy for damages to the car, but a federal circuit court of appeals allowed recovery.

"The Indiana court followed the weight of authority and defined theft as synonymous with larceny, requiring the common law intent to appropriate another's property wholly and permanently. The federal court allowed recovery, holding that an appropriation inconsistent with the property right of the person from whom it was taken was sufficient.

"The general rule in construing insurance contracts is that if the language is ambiguous or reasonably open to two constructions, the one most favorable to the insured will be adopted. The application of the rule would include 'taking without consent' cases within the coverage of theft policies.

"Where state statutes make vehicle taking a felony but do not require an intent to permanently deprive, courts generally consider such taking unprotected by theft policies. These cases follow the rule which defines theft under the insurance contract as 'theft as common thought and common speech would

now image and describe it.' A contrary result is reached by some courts on the ground that statutes have broadened the crime of larceny by expressly making certain acts larceny which did not contain all of the common law elements.

"The Indiana court defines felonious intent as the common law understood it. Taking an automobile temporarily without the consent of the owner, therefore, is not theft even though a more severe punishment is meted out to the wrongdoer than in grand larceny. The federal court reconciles the statutes with the common law definition and holds, use inconsistent with the property interest of the owner is included within the theft clause.

"A strict application of the common law seems to justify the Indiana decision. However, in view of the rule of interpretation favoring the insured as well as the statutory changes of intent in larceny, the more modern view of the federal court is to be commended."

When we reflect that nowadays the means of identifying and recovering stolen automobiles are so efficient, the likelihood of the owner of it being *permanently* deprived of it through trespass, theft, larceny or otherwise is so remote that it would scarcely be worth an owner's while to insure his car against "theft" if the policy would only cover a case where he is permanently deprived of it. Indeed, in the common practice of automobile thieves there is no intention of depriving the owner of it permanently. The thief's intention as indicated by his usual conduct is to use the car for a few hours or a few days and abandon it before the peril of his incriminating possession of it leads to his undoing. Should not the insurance company be liable on its "theft" policy in such a typical case? And is it not fairer to hold the insurer to a strict interpretation of his contract, rather than the insured, who if he is not protected by the policy he has paid for gets nothing for his money?

This court holds to the liberal view as laid down in the Aldridge case, *supra,* and other cited cases to the same effect.

The judgment of the district court is affirmed.

HOCH, J., not participating.