No. 43,241

HAROLD EIS, *Appellant,* v. HAWKEYE-SECURITY INSURANCE CO., *Appellee.*

(386 P. 2d 206)

Opinion filed November 2, 1963.

*Patrick L. Connolly,* of Topeka, argued the cause, and *Stanley R. Roose,* and *Milford M. Magee,* both of Topeka, were with him on the briefs for the appellant.

*Charles L. Davis, Jr.,* of Topeka, argued the cause, and *Byron M. Gray,* and *Maurice D. Friedberg,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This appeal involves the construction of an insurance policy, designated as a "Garage Liability Policy."

The construction, placed upon the policy by the district court, excluded plaintiff's claim as to defendant's liability and plaintiff has appealed.

The case was submitted to the lower court on a stipulated statement of facts which will be summarized.

Appellee issued a garage liability insurance policy to the appellant which included a physical damage supplement covering theft. The policy also contained an endorsement excluding theft under particular circumstances. The basic policy is not presented in the record.

The physical damage supplement to the policy contained a schedule of coverages and spaces for the insertion of the amounts of premiums. On this schedule were typewritten the words "$25.00 See False pretense End. attached." However, no false pretense endorsement was ever attached to the policy and no premium was paid for such an endorsement.

Subsequent to the issuance of the original policy containing the endorsements, and prior to the occurrence of the loss which is the subject matter of this action, a special endorsement was attached to the policy amending the schedule of coverage and premiums. The amended schedule showed the charge of $25.00 for "Dealers' Supplemental Coverage" instead of for false pretense and no mention was made in the special endorsement of the false pretense endorsement.

A dealer's supplemental coverage endorsement, insuring the appellant against malicious mischief or vandalism, was also attached to the policy.

The appellant did not pay the premium of $174.90, set out in the original schedule of premiums which included the charge for a false pretense endorsement, but did pay the $134.00 premium for the amended schedule of premiums which included coverage for

malicious mischief of vandalism. This coverage was added to the original policy subsequent to its issuance.

Appellant was the owner of a 1960 Buick convertible automobile which was insured under the policy. The stipulation states:

"That on November 21, 1960, the plaintiff voluntarily surrendered mere custody of the insured vehicle to a Mr. Dockery although not surrendering possession of or title to the insured vehicle (as defined by law); and that thereafter said Dale Dockery committed a theft of the insured vehicle.

"That the insured automobile was recovered some months later with damage which included cigarette burns, blood stains, motor damage, tire cuts, broken glass, and body damage on all four quarters."

The action was to recover the reasonable cost of repairs to the automobile in the amount of $700.00.

The first question presented is whether the exclusionary provision, in the special endorsement, excluded coverage for the theft under the facts as stipulated. The special endorsement attached to the policy contained the following exclusion:

"The Policy does not apply:

"Under any coverage, to loss resulting [1] from the insured voluntarily parting with title to or possession of any automobile, if induced to do so by any fraudulent scheme, trick, device, false pretense or [2] from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person entrusted by the ensured with custody or possession of the automobile." (Numbers supplied to identify separate clauses.)

The appellant seeks to apply a strained and unusual construction to the sentence. He admits that the sentence contains two exclusions but in his brief suggests:

"Comparison of the two exclusions show in appellant's opinion that coverage is afforded unless either one of two conditions exist, namely a voluntary parting by the insured with title to the insured vehicle or secondly the parting by him with possession of the insured automobile. The word 'custody' appearing in the instant exclusion is, . . ., merely a part of the adverbial clause, modifying the word 'parting.' Treating the instant exclusion as a complete sentence and reducing it to its basic idea, it reads as follows: 'The policy does not apply to loss resulting from insured's parting with title or possession of automobile.' "

The appellant ignores the fact that the words "or from" separate the two parts of the sentence in the disjunctive. The co-ordinating conjunction "or" introduces and connects the second clause of the introductory phrase "the policy does not apply under any coverage to loss resulting . . ." The second clause is entirely independent of the first.

Insofar as here material the exclusion states, "The policy does not apply: Under any coverage, to loss resulting from . . ., theft . . ., committed by any person entrusted by the insured with custody . . . of the automobile."

Appellant's construction would render the second clause meaningless. An owner of an automobile does not part with title as the result of conversion, theft, larceny, robbery, etc.

Appellant directs our attention to *Motor Co. v. Insurance Co.,* 111 Kan. 225, 207 Pac. 205, which holds that the action of a swindler who obtained an automobile by means of trick or artifice constituted "a species of theft for which the insurance company was liable."; *Tripp v. United States Fire Ins. Co.,* 141 Kan. 897, 44 P. 2d 236, which holds that the taking of an automobile by one who presented himself as a prospective purchaser constituted a theft; and *Baker v. Continental Ins. Co.,* 155 Kan. 26, 122 P. 2d 710, holding that even a temporary taking of the insured vehicle constituted a theft under automobile policies insuring against theft.

The cases are not helpful here for two reasons. First, the record does not inform us of the nature and purpose of the thief's custody of the automobile. Second, it is admitted that there was a theft of the automobile. The question is whether theft by a custodian was excluded from the policy.

Appellant insists *Tripp v. United States Fire Ins. Co.,* supra, supports his contention. That case is clearly distinguishable from the case at bar. In *Tripp* the exclusion excluded theft by a person to whom possession had voluntarily been surrendered. The court held that mere custody was not equivalent of possession and therefore theft by a mere custodian was not excluded. In the opinion the court stated:

". . .; that plaintiff in letting Hanson drive the car to try it was not intending to and did not part with the possession of it; that had the insurance company wanted to make an exception with reference to change of custody resulting from fraudulent scheme, trick, device or false pretense, it could easily have used words so appropriate to that end there could have been no difference of opinion with respect thereto, and failing that, the terms of the exception must be construed against it and favorably to the plaintiff, and so construed, plaintiff did not voluntarily part with possession of the insured automobile." (p. 900.)

In the instant case the insurer has done that which was suggested in *Tripp,* supra. It excluded theft by a person entrusted with custody in addition to excluding possession.

The cases of *Pacific Indemnity Co. v. Harrison,* (Tex. Civ. App.) 277 S. W. 2d 256; and *Hanover Fire Ins. Co. v. Scroggs,* 92 Ga. App. 548, 88 S. E. 2d 703, construed an exclusionary clause such as we have here, and held theft by a custodian to be excluded.

In *Hanover Fire Ins. Co. v. Scroggs,* supra, it was said:

". . . While clauses in insurance contracts, where doubtful or ambiguous, should be construed most strongly against the insurer (citing cases), nevertheless unambiguous provisions should be given their plain and reasonable intendment. (citing cases). There is no ambiguity in the above quoted clause, and the contention that the words 'voluntarily parting with both title and possession of any automobile' are applicable to that part of the provision which begins 'or from embezzlement, conversion,' etc., is not tenable, not only because the word 'or from' separate the two parts of the sentence in the disjunctive, but also because to so interpret it would render the last part absolutely meaningless. One does not part with title as the result of conversion, theft, larceny, robbery, and so on." (p. 550.)

Appellant also contends that false pretenses should have been covered by the policy. The stipulation of facts in connection with the subject states:

". . .; that to this original policy was attached a 'Physical Damage Supplement' (A4562), insuring plaintiff's vehicles from losses due to collision or upset, fire, lightning and transportation, and theft (Broad Form); . . ."

・　・　・　・　・　・　・　・　・　・　・　・　・

"That no false pretense endorsement was ever attached to said policy of insurance; . . .

"That on the foregoing Physical Damage Supplement (A4562) appeared a Schedule of premiums and coverages. The premiums appearing on this Physical Damage Supplement were $85.00 for coverage F, $25.90 for coverage G, $39.00 for Coverage H, and $25.00 alongside the words 'See False Pretense End.' Attached, 'For a total premium of $174.90.' No such false pretense endorsement was ever attached to the policy. Subsequent to the issuance of the above original policy and before November 21, 1960, a 'Special Endorsement' (A312) was attached to the policy and reads:

"'Endorsement A4562 is amended to show charges for coverage F as $59.00 for coverages G. and H. as $50.00 M. P. and charge of $25.00 for Dealers' Supplemental Coverage . . . making the total charge for Physical Damage Coverage $134.00.'

"The only premium actually paid by the insured was the total shown on the Special Endorsement (A312) or $134.00, which recited no false pretense coverage."

There is nothing in the stipulation of facts which indicates any mistake, misunderstanding, or deceit. It would appear from the record that the insured got the coverage for which he paid; that he

paid for the coverage which he desired; and that false pretense was not included.

Furthermore, there is nothing in the record which indicates that the thief got custody of the automobile by false pretenses. The facts as stipulated do not disclose the method or manner by which the thief got custody. Even though false pretenses were covered by the policy, such facts do not purport to show that false pretenses were used by the thief to obtain custody.

Appellant further contends that the damages to the automobile are covered by the provisions in the policy insuring against loss or damage resulting from malicious mischief or vandalism. The only facts stipulated touching the question are:

"That the insured automobile was recovered some months later with damage which included cigarette burns, blood stains, motor damage, tire cuts, broken glass, and body damage on all four quarters."

The district court found that the facts stipulated were not sufficient to constitute malicious mischief or vandalism. We agree. There is no showing as to how or in what manner the damages listed were incurred.

Malicious mischief is a well considered term under the law. It has been generally recognized as a distinct common law offense. Malice is an essential ingredient.

See 54 C. J. S., Malicious Mischief, p. 935 § 3[a], where the following statement appears: "Malice has been held to be an essential ingredient of malicious mischief both at common law and under most of the statute defining the offense. . ."

There are no facts presented in the stipulation of facts which tend to indicate malice.

The word "vandal" generally means a ruthless plunderer. The word was taken from one of the tribes of Vandali. Webster's New Twentieth Century Dictionary, Unabridged (Second Edition), states:

"1. one of the most barbarous of the East Germanic tribes, that ravaged Gaul, Spain, and northern Africa, and invaded Rome in the fifth century; notorious for destroying the monuments of art and literature.

"2. one who willfully or ignorantly destroys or disfigures, especially that which is beautiful or artistic."

The word "vandalism" connotes the acts of vandal. It is defined in 91 C. J. S., Vandalism, p. 802, as follows:

"Originally the word 'vandalism' meant the barbaric and ruthless destroying or spoiling of something venerable, artistic, or beautiful; and, according

to the dictionaries, 'vandalism' means the wilful or ignorant destruction of artistic or literary treasures; hostility to, or contempt for, what is beautiful or venerable. In ordinary usage the word is not limited to the destruction of works of art, but has been broadened in its meaning to include destruction of property generally."

There are no facts presented in the record which would establish that the damage to the car was an act of vandalism.

We find nothing in the record presented or in the contentions advanced by appellant which warrants or permits a reversal of the trial court's judgment.

In conclusion it should be stated that the appellant's claim for attorney fees was properly denied. Appellant having failed to recover under the policy of insurance, the insurer had just cause and excuse (G. S. 1961 Supp., 40-256) for refusing payment. See *Lindesmith v. Republic Mutual Fire Ins. Co.,* 189 Kan. 201, 368 P. 2d 35; and *Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P. 2d 937.

The judgment is affirmed.

ROBB and FATZER, JJ., dissenting.