No. 57,590

RAYMOND GIRRENS, *Appellant*, v. FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellee.*

(715 P.2d 389)

Opinion filed February 21, 1986.

*Gerald W. Scott*, of Wichita, argued the cause and was on the brief for appellant.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *William R. Sampson*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Plaintiff Raymond Girrens appeals from a jury

verdict denying recovery under the uninsured motorist clause of his father's automobile insurance policy.

The principal facts are not in dispute. On February 27, 1977, plaintiff sustained personal injuries in an off-highway accident when the motorcycle he was riding was involved in a collision with another motorcycle, neither of which was insured. Plaintiff sustained severe injury and has been partially compensated under the medical payment and personal injury protection coverage in the policy. Plaintiff's father, Lawrence Girrens, was the named insured in five automobile policies covering his various vehicles, all of which were issued by the defendant, Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau). The provisions of the policies applicable to this action were identical and hereafter the policies will be referred to in the singular. Farm Bureau denied recovery under the policy based upon its definition of the "insured" in the uninsured motorist coverage section of the policy. This suit followed, resulting in a jury verdict for Farm Bureau. Additional facts will be set forth as they become relevant to the various issues on appeal.

The essential inquiry, both at trial and on appeal, is whether Raymond Girrens fell within the definition of "insured" set forth in the uninsured motorist section of his father's automobile insurance policy. The definition of "Insured" found in that section of the policy provides:

"(a) Insured. The unqualified word insured means (1) the named insured if an individual, or spouse if a resident of the same household, or *any dependent person whose legal residence is the household of the named insured* and with respect to whom the named insured or spouse is a parent or stands in loco parentis." (Emphasis added.)

The foregoing definition of "insured" generates two of the plaintiff's principal issues on appeal. First, he contends the definition illegally limits the coverage under the uninsured motorist clause to a more restrictive class than other definitions in the policy. Second, it is asserted that the term "dependent person" is ambiguous and should be construed to include the plaintiff.

Plaintiff contends that, as the definition of insured under the personal injury protection and medical payment coverages includes relatives under certain circumstances, the uninsured motorist coverage must also cover those relatives, including plaintiff. The policy provides:

"III. DEFINITION OF INSURED.

(a) with respect to the insurance for *bodily injury liability* and for *property damage liability* the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. . . .

(b) *with respect to Coverage C-Medical Payments,* the unqualified word 'insured' includes the named insured, if an individual, his spouse or relatives of either while residents of the same household."

It is apparently plaintiff's position that Farm Bureau could not limit its liability under the uninsured motorist clause except as provided under the broadest coverage which may be found anywhere in the policy. Having included "relatives . . . while residents of the same household" in its medical payment coverage, it is asserted that similar coverage must be provided under the uninsured motorist provision of the policy. As stated in plaintiff's brief, "if a person is an insured under any portion of the policy, the person must also be an uninsured motorist insured." Plaintiff relies upon K.S.A. 1985 Supp. 40-284 and *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973), to support his position. K.S.A. 1985 Supp. 40-284 provides in part:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization."

In *Forrester* the court was faced with an unusual set of facts which the trial court observed would not occur again "in a million auto collisions." The named insured, Raymond Noel, was the owner of two automobiles, only one of which was insured. Plaintiff Forrester was injured while a passenger in the insured vehicle, driven by one of Raymond's sons, which col-

lided with the uninsured Noel vehicle being driven by another of Raymond's sons. Forrester sought recovery under the uninsured motorist coverage of the policy issued upon the car in which he was a passenger. The defendant denied coverage based upon an exclusion in the uninsured motorist coverage for any injury received from being struck by an uninsured vehicle also owned by the named insured, Raymond Noel. "Insured" was defined in the Noel policy as:

"(1) the first person named in the declarations and while residents of his household, his spouse and the relatives of either; . . ."

It does not appear there was any separate definition of insured under the uninsured motorist coverage section of the policy and the defendant relied solely upon the exception denying coverage if both vehicles involved in the collision were owned by the same person. The court stated:

"Actually, the precise question whether an insurer has the right to restrict uninsured motorist coverage to exclude any and all persons, including relatives and passengers—except the named insured, is not before us here; we merely hold that the statute requires that coverage be afforded those persons falling within "insured" as defined in the policy. In the instant case plaintiff is an insured under definitions set forth in the policy and thus has a statutory right to the protection for the 'insured' required by the statute." 213 Kan. at 447-48.

"We hold that plaintiff as an insured under the policy is an insured within the meaning of the statute and that the exclusion operates to annul the coverage mandated therein, thus, the exclusion is void with respect to a person in plaintiff's position. We do not determine herein the limits of the power of defendant, within statutory authority, to predetermine who is to be an insured. Our holding is limited to the facts herein that where an insured, in an insured automobile, is injured by an uninsured motorist the coverage mandated by the statute precludes his exclusion." 213 Kan. at 451-52.

The court concluded that as Forrester was included within the definition of insured for uninsured motorist coverage, it could not then be limited by an exclusion. In doing so, the court held:

"An exclusionary clause of an uninsured motorist provision of an insurance policy which purports to exclude from coverage an insured person occupying the insured automobile when his injuries are caused by an uninsured operator of an uninsured automobile because it was owned by the named insured, is void and of no effect as an attempt to dilute the statutory mandate of uninsured motorist coverage. (K.S.A. 1972 Supp. 40-284.)" 213 Kan. 442, Syl. ¶ 6.

In *Farmers Ins. Co. v. Schiller*, 226 Kan. 155, 597 P.2d 238 (1979), the court had before it a consideration of whether Schiller fell within the definition of insured as a permissive user of the

vehicle. The court recognized that 40-284 was controlling and stated:

"In issuing a policy of insurance a company has a right of contract which permits the company to predetermine who is to be 'the insured.' [Citation omitted.] This court has held, however, that when that determination is once made the persons insured under the uninsured motorist coverage cannot then be so defined to limit or restrict the persons insured and thereby dilute coverage under the uninsured motorist provisions of the policy. A person covered or insured as a named insured in the policy cannot be eliminated by definition from uninsured motorist coverage. [Citation omitted.] In the present case the persons to whom the coverage is extended under the uninsured motorist provisions of the policy are restricted no more than in the other provisions of the policy. The persons predetermined for coverage in the policy are covered against the uninsured motorist. Insurance coverage is not present in either event when the vehicle is being operated by a third party without the express or implied permission of the insured.

"K.S.A. 40-284 requires that insurance companies provide coverage for personal injuries sustained 'by the insured.' The persons insured under the general policy may be predetermined by the company to include a named insured, a relative, or a passenger occupying the insured vehicle provided the actual use of the vehicle is by the named insured or any other person with permission of the named insured. The uninsured motorist statute was not enacted to provide coverage for everyone." 226 Kan. at 161-62.

We are not faced with a policy restriction which attempts to dilute uninsured motorist coverage by limiting those covered by the policy to a class more restrictive than the insureds under the general liability provisions of the policy. Under those provisions only the insured, his or her spouse and permissive users are considered insured. For uninsured motorist coverage, the insured not only includes those individuals but is extended to cover a "dependent person" under certain circumstances. Under the Kansas automobile injury reparations act, K.S.A. 1985 Supp. 40-3107 requires every motor vehicle liability policy to insure the named insured and persons using the vehicle with the consent of the named insured. The same statute requires personal injury protection benefits must include the named insured, relatives residing in the same household, permissive users and others under certain circumstances. Thus, the statutes contemplate that there may be more than one definition of an insured in the same policy. K.S.A. 1985 Supp. 40-284 requires every automobile liability insurance policy to include uninsured motorist coverage and we hold that the class of insureds under such coverage cannot be more restrictive than the class covered by the liability coverage for personal injury and property damage under

K.S.A. 1985 Supp. 40-3107. In the present policy it is clearly stated on the face of the policy that:

"UNINSURED MOTORIST COVERAGE (A-1) is provided as a part of the Bodily Injury Coverage; . . ."

We conclude the definition of "insured" contained in the uninsured motorist provisions of the subject policy complies with the requirements of the statutes and is not controlled by the medical payment or personal injury protection clauses.

Plaintiff's next argument is that the term "dependent person" is ambiguous and therefore the policy must be construed to include plaintiff as an insured under the uninsured motorist coverage.

When a question arises regarding the interpretation of an insurance contract, a number of well-settled legal principles must be considered. If the policy provisions are clear and unambiguous there is no need for application of rules of construction. *Maryland Cas. Co. v. Alliance Mut. Cas. Co.*, 223 Kan. 674, 676, 576 P.2d 625 (1978). An ambiguity is said to exist if the words used in the contract may be understood to reach two or more possible meanings. *Western Casualty & Surety Co. v. Budig*, 213 Kan. 517, 519, 516 P.2d 939 (1973). Where an insurance contract is open to different constructions, that most favorable to the insured must be adopted, but this rule does not authorize a perversion of the language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, Syl. ¶ 2, 681 P.2d 15 (1984).

While the term "dependent person" may have different meanings under differing factual situations, we do not find the term so ambiguous under the facts and insurance policy herein as to require as a matter of law that it be construed to include plaintiff. At the time of the accident plaintiff was twenty-three-years old, single and lived at home on the family farm. He was employed full time as a machinist and supplemented his income with farm work. He did not own a licensed vehicle. His parents provided him with room, board and transportation, in that he was free to use one of his father's vehicles. In return he worked on the family farm and there was some evidence that he did so in exchange for the room, board and transportation furnished by his parents.

In his brief plaintiff points to cases wherein words such as "relatives," "resident," "member," "household" and "family" have been construed because of their ambiguous nature. It is argued "dependent person" is also subject to the rules of construction. Although it obviously needs definition, it does not necessarily follow that plaintiff is automatically brought within the policy coverage as an insured. The trial court, in its instruction number 6, which will be discussed in detail later, provided the jury with a definition and guidance sufficient for it to determine whether plaintiff was a "dependent person." Plaintiff takes the position that the ambiguity also extends to the term "insured" and as "insured" is defined for personal injury protection and medical payment coverage as including relatives, then we must construe "insured" under the uninsured motorist clause to also include relatives. We do not agree. The term "insured" as it applies to the uninsured motorist is clear with the possible exception of the determination of who is a dependent person. The fact that such a determination may need to be made does not automatically extend coverage to include relatives who would not otherwise qualify under the policy.

While it does not appear that the term "dependent" or "dependent person" has arisen before in the context herein presented, it has been considered in various factual situations hundreds of times. See 12 Words and Phrases, "Dependent; Dependency." Although the present policy does not define the nature of the dependency required to invoke coverage, we think it is clear that the term relates to a monetary or otherwise generally accepted familial dependence for care and sustenance. The requirement that the dependent person be "a resident of the same household, or any dependent person whose legal residence is the household of the named insured and with respect to whom the named insured or spouse is a parent or stands in loco parentis" makes it clear that a parental setting or environment is contemplated. Early Kansas cases pertaining to fraternal insurance have had occasion to consider who may be considered a dependent. In *Johnson v. United Workmen*, 91 Kan. 315, 137 Pac. 1190 (1914), the court quoted with approval from a Massachusetts case as follows:

" 'The beneficiary must be dependent upon the member in a material degree for support, or maintenance, or assistance, and the obligation on the part of the

member to furnish it must, it would seem, rest upon some moral, or legal, or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member.' " p. 317.

See also *Rollins v. Independent Order*, 124 Kan. 166, 257 Pac. 754 (1927); *Modern Woodmen v. Comeaux*, 79 Kan. 493, 101 Pac. 1 (1909). Plaintiff goes to great lengths to point out that no cases exist on the precise point before the court because no other company has used the term "dependent person" in its designation of uninsured motorist coverage. It is true the specimen policies included in the record usually cover relatives and others but that does not require as a matter of law that the policy in question be construed to include persons obviously not contemplated under the clear language of the uninsured motorist clause. We agree with the trial court that a determination of whether plaintiff was a "dependent person" was a question of fact to be submitted to the jury under proper instructions. Even under our doctrine of liberal construction, we cannot totally ignore the policy language and extend coverage where it is not contemplated in the policy or is not required by statute. We also note that while the language used here is no longer included in Farm Bureau's policies, the form of the policy in question was approved by the Kansas insurance commissioner at the time of the accident herein.

Next, plaintiff asserts the trial court erred in its instructions to the jury on the definition of "dependent person." Many definitions from other cases and authorities are submitted in an attempt to discredit the trial court's instructions, which read:

"Instruction No. 6

"You are instructed that a 'dependent person' is one who relies on substantial contributions from another person, without which he would be unable to afford the reasonable necessities of life.

"He is not required to establish the status of a present total and absolute reliance upon that person for those contributions, but looks to that person and relies upon him for them with substantial regularity.

"As used in this instruction, 'contributions' are money, services, goods, or a means of living, given without cost to the recipient, and for which the recipient did not provide money, services or goods in exchange."

"Instruction No. 7

"The fact that Raymond Girrens declared himself as a dependent on his income tax returns and that his father, Lawrence Girrens, did not, is not determinative of the issue of dependency of the Uninsured Motorist provisions. The definition of 'dependent' adopted by the Internal Revenue Department is not in

evidence before you and may not be used as the definition for your use in determining whether Raymond Girrens was a dependent person."

The trial court is required to instruct the jury on the law applicable to the facts of the case. *State v. Payton,* 229 Kan. 106, 111, 622 P.2d 651 (1981). It is clear that error cannot be predicated on the trial court's refusal to give an instruction when its substance is adequately covered in other instructions. *Powers v. Kansas Power & Light Co.,* 234 Kan. 89, 92, 671 P.2d 491 (1983). If jury instructions properly and fairly state the law as applied to the facts of the case when they are considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal. *Douglas v. Lombardino,* 236 Kan. 471, 480, 693 P.2d 1138 (1985).

Plaintiff asserts the language in the court's instruction to the effect that without the contribution of his parents "he would be unable to afford the reasonable necessities of life" establishes an unreasonable standard which does not conform to a liberal construction of the policy. Definitions of a dependent may be found which cover the gamut from total dependency to a mere gratuitous contribution enjoyed but not actually needed by the recipient. Instructions requested by plaintiff also covered the entire range of possibilities. In the context used in the present policy, we are of the opinion that a substantial contribution required to provide the necessities of life is not an unreasonable standard. Here the plaintiff was employed full time as a machinist with supplemental income provided from farming. It cannot be said that just because plaintiff, 23 years old, had never left the family farm and enjoyed the benefits thereof he was a "dependent person." We find no error under the facts of this case in the instructions given by the trial court. The refusal of the trial court to rule as a matter of law that plaintiff was *not* a dependent person would appear to be a liberal construction of the policy language under these facts.

Plaintiff's next contention is that the court erred in requiring production of a transcript of a statement given by plaintiff to his attorney at a time when the attorney-client relationship existed as to this case. On December 13, 1979, plaintiff's deposition was taken by defense counsel and in preparation for the deposition the plaintiff reviewed a transcript of an oral statement made to his attorney on July 14, 1977, nearly two and one-half years earlier. Defense counsel demanded a copy of the transcript for

use in deposing the plaintiff and, when plaintiff's counsel refused, a motion was made to the court to compel production of the transcript. The motion was sustained and defense counsel then utilized the transcript at trial in his cross-examination of the plaintiff and attempted to use it in cross-examination of the plaintiff's father. Defendant asserts that plaintiff has acquiesced in the trial court's order and that it is not a proper issue on appeal. We find defendant's argument as to acquiescence to be without merit. Plaintiff asserts that the court's production order violates the lawyer-client privilege in K.S.A. 60-426(a), which states in part:

"[C]ommunications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it, and (3) to prevent any other witness from disclosing such communication . . . ."

Certain exceptions are included in the statute, none of which are applicable here. We also note that the defendant has not seen fit to brief the merits of plaintiff's position, perhaps in recognition of the weakness of its own.

The principal case relied on by the trial court in holding that privileged documents may be used in preparation for depositions is *Wheeling-Pittsburgh Steel v. Underwriters Labs.*, 81 F.R.D. 8 (N.D. Ill. 1978). In *Wheeling* a corporate vice-president used a file captioned "Communications with Counsel" to prepare for his deposition. The district court held that Fed. R. Evid. 612 allowed discovery of these privileged documents under the facts of the case. Rule 612 provides in part:

"[I]f a witness uses a writing to refresh his memory for the purpose of testifying, either—
(1) while testifying, or
(2) before testifying, if the court in its discretion determines it is necessary in the interest of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

Plaintiff correctly notes that Rule 612 has no counterpart in the Kansas Rules of Evidence. The trial court's ruling, if approved, would not only hamper proper trial preparation but would also contravene applicable statutory and case law on the subject. The essential purpose of the lawyer-client privilege is to secure the

client's confidence and promote freedom of consultation with legal advisors by clients. *Cranston v. Stewart,* 184 Kan. 99, 103, 334 P.2d 337 (1959). In *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, 519, 527 P.2d 1026 (1974), we stated:

"The rule has always been that communications between attorney and client are privileged when made in professional confidence — this is the essence of our code governing the subject [Citation omitted]."

In our statutes governing discovery, K.S.A. 60-226 provides in part:

"(b) *Scope of discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) *In general:* Parties may obtain discovery regarding any matter, *not privileged* which is relevant to the subject matter in the pending action, . . . Except as permitted under paragraph (3) of this subsection, *a party shall not require a deponent to produce, or submit for inspection, any writing prepared by, or under the supervision of, an attorney in preparation for trial."* (Emphasis added.)

Again, the exceptions and conditions in the statute do not apply to the facts of this case. We are not impressed by the federal authorities cited by the defendant in the trial court and find no basis for their application under our rules and statutes. Here there was no showing of necessity or that denial of production would prejudice the preparation of the defendant's case or cause any hardship or injustice. See *Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947); K.S.A. 60-226(b)(3). It would be difficult to imagine any lawyer-client communication that would, of necessity, be more subject to the privilege than the client's statement to his lawyer of the circumstances of the event in question. In addition, it is a part of the work product of the lawyer necessary to the preparation for trial. We conclude the trial court erred in ordering production of plaintiff's statement to his lawyer and in allowing its use at trial.

However, our conclusion that the trial court erred does not necessarily require the granting of a new trial. Under the provisions of K.S.A. 60-261, error in a trial proceeding which does not affect the substantial rights of the parties is to be considered harmless and does not constitute grounds for the granting of a new trial. We have carefully considered the record in this case and conclude that the discovery and use of plaintiff's privileged statement was harmless error and that substantial justice has been done in this case.

The final issue on appeal is whether plaintiff is entitled to

attorney fees. The relevant statute is K.S.A. 40-256. Under this statute, no provision is made for the awarding of attorney fees to an unsuccessful plaintiff. Accordingly, the trial court properly refused to grant plaintiff his attorney fees. *Eis v. Hawkeye-Security Ins. Co.*, 192 Kan. 103, 386 P.2d 206 (1963).

The judgment is affirmed.