REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0263

September Term, 2014

_____

TERESA N. RIGBY, et al.

v.

ALLSTATE INDEMNITY COMPANY

_____

Krauser, C.J.,
Eyler, Deborah S.,
Leahy,

JJ.

_____

Opinion by Krauser, C.J.

_____

Filed: September 30, 2015

This is an appeal from a declaratory judgment issued by the Circuit Court for Baltimore City, averring that a "personal umbrella policy" issued by appellee, Allstate Indemnity Company, to the owner of an automobile (the "policy holder"), did not include, as an "insured person" under that policy, an adult and unrelated member of the policy holder's household. Thus, his negligent operation of the policy holder's car that had resulted in injuries to appellants—Baltimore City police Officer Teresa Rigby, tow truck operator Herman E. Griffiths, and Ashley Sims—was not a "covered occurrence" under Allstate's policy. Appellants disagree. Citing, among other things, his youth, the length of his residency, as well as his past and present economic reliance on and close personal relationship with the policy holder, appellants contend that the adult in question was a "dependent person" and in the care of the policy holder at the time of the accident at issue and was therefore an "insured person" as defined by the Allstate policy. For the reasons that follow, we shall affirm the judgment of the circuit court.

## I.

In June 2011, Officer Rigby, together with tow truck operator Griffiths, were rendering assistance to Sims, the driver of a disabled automobile, parked on the shoulder of the road, when a vehicle driven by twenty-two-year-old Robert Vanderford collided with Officer Rigby's police cruiser. The impact of that collision caused the cruiser, in turn, to strike the officer and Griffiths as well as Sims's car (in which Sims was then sitting), injuring all three individuals. At the time of the accident, Vanderford was driving an automobile

owned by Lawrence Archembeault, with whom he was residing, and whose "umbrella" insurance policy with Allstate is the subject of this appeal.

Ultimately, Officer Rigby, Sims, and Griffiths brought separate negligence actions in the Circuit Court for Baltimore City against Vanderford and Archembeault, which were subsequently consolidated for trial. The discovery that ensued disclosed that, at the time of the accident, Archembeault (whom we shall hereafter refer to as the "policy holder") maintained two separate insurance policies with Allstate: One was an automobile insurance policy that provided up to $500,000 of liability coverage;[1] the other was an "umbrella" policy that supplied up to $5,000,000 of coverage for negligence and, central to this appeal, defined an "insured person" to include "any dependent person in your care, if that person is a resident of your household." Because the former policy's coverage did not offer sufficient recompense for the injuries and economic damages appellants sustained, they turned to the latter policy for adequate redress,[2] claiming that Vanderford qualified as an "insured person," under that policy.

After securing a stay of the appellants' consolidated negligence actions, Allstate filed a declaratory judgment action against the policy holder, appellants, and Vanderford, in the same court, seeking a determination of whether the policy holder's umbrella policy provided

---

[1]There is no dispute that appellants are entitled to recovery under Archembeault's automobile insurance policy.

[2]According to appellants, Rigby's economic damages alone "are well over one million dollars," an assertion which appellee does not appear to contest.

coverage for Vanderford's negligent act. The Baltimore City circuit court declared that it did not, explicating that, at the time of the accident, Vanderford was not a "dependent person" "in the care of" the policy holder and thus did not fall within the policy definition of an "insured person." Contesting that judgment, appellants noted this appeal.

## II.

At his deposition, Vanderford testified that, in June 2008, he was living in an apartment in Albany, New York, "working two jobs" and "taking care of a bunch of homeless kids." After Vanderford was rendered homeless by a fire started by one of the adolescents, he rented an apartment from the policy holder and his domestic partner, Donald Vandermark (not to be confused with our errant driver, "Robert Vanderford").

Less than a month later, the nineteen-year-old Vanderford moved from Albany to the policy holder's home in the Roland Park neighborhood of Baltimore City. And, for the next three years, between June 2008 and June 2011, Vanderford lived principally at that residence together with the policy holder, his domestic partner, and the policy holder's mother, Gail Archembeault. But the continuity of that residency was periodically interrupted, when Vandeford decided to move out of the policy holder's home, only to later move back in. He did this on three separate occasions.

When he was living in the policy holder's home, Vanderford performed various domestic chores for the policy holder, such as cutting the lawn, raking leaves, and cleaning gutters, in exchange for room and board. He did not pay any rent for nearly two years. But,

fourteen months before the accident at issue, in April 2010, he obtained full-time employment with Flextronics (a contractor for Verizon Wireless), as a telephone technician, earning $26,000 per year, and thereafter agreed to pay a rent of $600 per month.

After obtaining full-time employment, Vanderford also assumed responsibility for the payment of such personal expenses as the cost of his telephone, food, and clothing (which had previously been paid by the policy holder). And, while the policy holder allowed Vanderford to use his 1999 Saab automobile, the vehicle Vanderford was driving at the time of the accident, Vanderford paid for fuel for the vehicle.

Although the policy holder later deponed that he acted as a "mentor" to Vanderford, appellants insist that the relationship was even closer than that, noting that, in a recorded statement made to an Allstate adjuster on the day of the accident, Vanderford described the policy holder as his "father" and that, during Vanderford's criminal trial for traffic offenses arising out of the automobile accident at issue in this case, Vanderford's counsel referred to the policy holder and his domestic partner as Vanderford's "family." While the semblance of a familial relationship may have existed, the policy holder never claimed Vanderford as a dependent on his tax return, never gave Vanderford any money, credit cards, or an "allowance," nor paid for Vanderford's medical care or designated him as a beneficiary of his health insurance policy. Moreover, the policy holder admitted that he did not exercise any control over Vanderford's comings and goings. In fact, Vanderford was, in the policy

holder's words, "free to leave at any time he cho[se]" and did move out on three separate occasions.

## III.

This appeal, as noted earlier, is from a declaratory judgment, issued by the circuit court. That court concluded that the term "dependent person" is not ambiguous and that Vanderford was not a "dependent person" as defined by the umbrella policy. It reasoned as follows:

> Even though Defendant Vanderford lived with and was admittedly like family to Defendant Archembeault, he was not dependent upon Archembeault to live. The facts indicate that Vanderford is a 24 year old man[7] who rents a room in Archembeault's home, has free reign of the house, and borrow[s] the car to commute to work, but if for some reason the relationship is terminated, Vanderford is able to live on his own. Thus, it cannot be said that he is a dependent of Archembeault.
>
> Additionally, it is clear that Vanderford does not rely on Archembeault to provide the necessities of life. That is evidenced by his natural resourcefulness. Prior to meeting Archembeault and his partner, Vanderford was living in New York, working two jobs and taking care of homeless children. . . . Archembeault has no legal responsibility to care for Vanderford. . . . Once Vanderford became employed he . . . provided for his own food [and] his own cell phone, and he purchased gas for the car whenever he used it. . . . [He] was not subject to discipline by Archembeault, who did not control his movement around the house. Vanderford was free to move out if he wanted to, and he did on two occasions, but was allowed to come back and live with Archembeault. Vanderford had the freedom to do as he pleased[.] . . . Thus, Vanderford is not a "dependent person" pursuant to the insurance policy.

_____

[7] He was 22 years old at the time of the accident.

Appellants noted this appeal from that judgment, presenting the following issue for our review:

> Whether Vanderford was a "dependent person" and therefore an "insured," under the umbrella policy, which defines "insured" to include "any dependent person" in the policy holder's care, "if that person is a resident of" the policy holder's household.

**IV.**

At the outset, it appears that the parties disagree as to the proper standard of review to be applied in this case. The source of the disagreement is the parties' conflicting views as to the nature of the proceedings below. Appellants characterize those proceedings as akin to a hearing on a motion for summary judgment, while Allstate maintains that they were tantamount to a bench trial. Under the circumstances of this case, this amounts to a distinction without a difference, as the questions before us, regardless of which of the two proceedings occurred, are subject to the same standard of review by this Court, given that the parties below were not at odds as to any material fact relevant to their dispute. In any event, the court did deny Allstate's (renewed) motion for summary judgment before moving on to the merits of the matter, and, in so doing, held what amounted to a bench trial, though no live testimony was taken, and no facts were in dispute. *See*, *e.g.*, *Mundey v. Erie Insurance Group*, 167 Md. App. 444, 448, 450-51 (2006) (applying Md. Rule 8-131(c), rule applicable to appellate review of bench trials, to lower court proceeding, in which "[n]either party called live witnesses," but, rather, "each proffered evidence from which the circuit court could have found" the underlying facts), *aff'd*, 396 Md. 656 (2007).

As this is an appeal from the decision rendered after a bench trial, we "review the case on both the law and the evidence." Md. Rule 8-131(c). We "will not set aside the judgment of the trial court on the evidence unless clearly erroneous," giving "due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* But, the clearly erroneous standard of Rule 8-131(c) "does not apply to a trial court's determinations of legal questions or conclusions of law based upon findings of fact." *Elderkin v. Carroll*, 403 Md. 343, 353 (2008) (quoting *S. Mgmt. Corp. v. Kevin Willes Constr. Co.*, 382 Md. 524, 539 (2004)). Those determinations are subject to de novo review. *Id.*

## V.

Turning next to the principles of contract interpretation that are relevant to this dispute, we note that an insurance policy, like any contract, must be construed "in its entirety," and, "if reasonably possible," we give effect "to each clause," avoiding "an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Connors v. Gov't Emp. Ins. Co.*, 442 Md. 466, 480 (2015) (quoting *Cochran v. Norkunas*, 398 Md. 1, 17 (2007)). But, "in the event that an insurance policy contains ambiguous language," the language of the policy is to be construed "liberally in favor of the insured and against the insurer *as drafter of the instrument.*" *Id.* at 482-83 (quoting *Megonnell v. United Services Auto. Ass'n*, 368 Md. 633, 655 (2002)). And a "policy term is considered 'ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.'" *Id.* at 482 (quoting *Cole*

*v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305-06 (2000)). But, simply because "a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous." *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 496 (1967).

## VI.

The umbrella policy at issue provides in pertinent part:

> Allstate will pay damages which an **insured person** becomes legally obligated to pay because of bodily injury, personal injury or property damage, subject to the terms, conditions and limits of this policy. Bodily injury, personal injury and property damage must arise from a covered occurrence. We will not pay any punitive or exemplary damages, fines and penalties.

(Emphasis added.)

The policy defines an "insured person" as:

> a) you, and any other person who is named on the Policy Declarations;

> b) any person related to you by blood, marriage or adoption who is a resident of your household; or

> c) **any dependent person in your care, if that person is a resident of your household**.

(Emphasis added.)

Because the parties agree that subsections a and b are not applicable to the facts of this case but that subsection c is, we are left to ponder whether Vanderford was, under that

subsection, a "dependent person" and "in the care of" the policy holder at the time of the accident.

## VII.

Appellants contend that the terms "dependent person" and "in the care of" are ambiguous because the umbrella policy does not define either term and because "dependent" and "care" are words that have "multiple meanings" or "multiple shades of meaning." Those terms, they claim, should be interpreted in favor of appellants. Once that is done, we would have to conclude, they assert, that Vanderford, at the time of the accident, was "dependent" upon and "in the care of" the policy holder, thereby rendering them entitled to recovery under his umbrella policy.

Although, at first glance, the terms "dependent" and "in the care of" may suggest synonymity, they are not synonymous though they arguably partially overlap. For example, a person may be dependent upon another, in some respects, yet not in that individual's care, or a person, such as a foster child, may be in the care of his or her foster parents but is usually not financially dependent upon them but upon a state agency. *See*, *e.g.*, *Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 138-39 (Alaska 2007). Moreover, to suggest that they mean the same thing would run afoul of a basic principle of contract interpretation and, that is, when "reasonably possible," we must give effect "to each clause" of an insurance policy, *Connors*, *supra*, at 480 (citation and quotation omitted), and avoid treating either term as surplusage.

In any event, although there are no Maryland decisions that address the issues before us, there are two extra-territorial decisions that provide a thoughtful analysis of one or the other term, namely, the decision of the Supreme Court of Kansas, in *Girrens v. Farm Bureau Mutual Insurance Company*, 715 P.2d 389 (Kan. 1986), which addressed the question of how to interpret the term "dependent person" in an automobile insurance policy, and the decision of the Supreme Court of Michigan, in *Henderson v. State Farm Fire and Casualty Company*, 596 N.W.2d 190 (Mich. 1999), which considered the issue of how to construe the term "in the care of" in a homeowner's insurance policy. We turn first to *Girrens*.

Lawrence Girrens was the holder of five automobile insurance policies, issued by Farm Bureau Mutual Insurance Company ("Farm Bureau"), which provided coverage for "his various vehicles." *Id.* at 390. Each policy contained an "identical" uninsured motorist provision, which defined an "insured" to include "any dependent person whose legal residence is the household of the named insured and with respect to whom the named insured or spouse is a parent or stands in loco parentis." *Id.* at 390-91.

Raymond Girrens ("Raymond"), Lawrence Girrens's twenty-three-year-old son, was injured, when the motorcycle he was riding collided with another motorcycle. Because, at the time of the accident, neither he nor the other motorcyclist was carrying any insurance, Raymond filed a claim against his father's automobile insurer, Farm Bureau, contending that he was covered under the uninsured motorist provisions of his father's insurance policies. *Id.* at 390, 393. When his claim was denied, he brought suit against Farm Bureau,

presumably for breaching the terms of its policies.[3]  A jury trial ensued, and, following a

verdict in favor of Farm Bureau, Raymond appealed, claiming:  first, that the term

"dependent person," in each of the policies at issue, was ambiguous and must be construed

in his favor and against the insurer, Farm Bureau, thereby entitling him, he believed, to

uninsured motorist coverage under his father's policies; and, second, that the trial court erred,

in instructing the jury that "a 'dependent person' is one who relies on substantial

contributions from another person, without which he would be unable to afford the

reasonable necessities of life" and, furthermore, that he need not "establish the status of a

present total and absolute reliance upon that person for those contributions, but looks to that

person and relies upon him for them with substantial regularity."  *Id.* at 391, 395.

In rejecting Raymond's "ambiguity" claim, the Kansas Supreme Court, at the outset,

noted that, although "the term 'dependent person' may have different meanings under

differing factual situations," it was not "so ambiguous under the facts and insurance policy"

at issue "as to require as a matter of law that it be construed to include" the insured's son,

Raymond. *Id.* at 393.  Then, surveying the facts of the case before it, the Court observed that,

although, at the time of the accident, Raymond "lived at home on the family farm," he "was

employed full time as a machinist and supplemented his income with farm work" and that,

although his parents provided him room, board, and transportation, Raymond "worked on the

---

[3]The decision is silent as to the precise nature of the lawsuit, stating merely that, "This suit followed, resulting in a jury verdict for Farm Bureau." *Girrens v. Farm Bureau Mut. Ins. Co.*, 715 P.2d 389, 390 (Kan. 1986).

family farm and there was some evidence that he did so in exchange for the room, board and transportation furnished by his parents." *Id.* at 393-94.

Ultimately, in finding no merit to Raymond's claim of instructional error, the Kansas Supreme Court opined that, in "the context used in the present policy," the standard articulated by the trial court, that "a dependent person" requires a "substantial contribution" to "provide the necessities of life," was not "unreasonable" and that, given that Raymond "was employed full time as a machinist with supplemental income provided from farming," the mere fact that he still lived in his parents' home did not mean that he was a "dependent person." *Id.* at 395. It therefore affirmed the judgment in favor of the insurer, Farm Bureau.

Turning to the case before us, we begin by reiterating a standard principle of contract interpretation that we mentioned earlier, that is, that, simply because "a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous." *Humphrey*, *supra*, 246 Md. at 496. Or in other words, simply because appellants can point to several slightly different dictionary definitions of "dependent" does not render that term ambiguous. A "dependent person," as the Kansas Supreme Court aptly expressed it, is one who relies on another to provide "substantial contributions . . . , without which he would be unable to afford the reasonable necessities of life." *Girrens*, 715 P.2d at 395.

Applying that definition, Vanderford was less of a "dependent person" than Raymond in the *Girrens* case. Although Vanderford, like Raymond Girrens, was an adult living in the

home of another, he lived with the unrelated policy holder, while Raymond lived with his actual parents. While Vanderford, like Raymond, had a full-time job and also performed additional work for the homeowner/policy holder, Vanderford, unlike Raymond, actually paid rent in the amount of $600 per month to the policy holder, which though admittedly a low rent for living in Roland Park,[4] was significantly more than a nominal amount. Thus, Vanderford's circumstances lead us to conclude that the circuit court did not err in finding that Vanderford was not "dependent" upon the policy holder to the extent that it rendered him a "dependent person" under the Allstate policy at issue.

## VIII.

Nor does appellants' claim that the term "in the care of" is ambiguous have any merit. As did the circuit court and the parties below, we turn to the decision of the Supreme Court of Michigan in *Henderson v. State Farm Fire and Casualty Company*, *supra*, 596 N.W.2d 190. There, Michigan's highest court addressed this very issue in interpreting a homeowner's insurance policy.

Daniel Henderson, while visiting the residence of Bonnie Twitchell, was stabbed during an altercation "with some strangers" that took place "in front of the Twitchell home." *Id.* at 192. At that time, Bonnie Twitchell lived with her twenty-year-old son, Travis Twitchell, and his eighteen-year-old girlfriend, Dawn Mysierowicz, *id.* at 192 n.2, and

---

[4]The parties stipulated that appellants had intended to call an expert witness who, had she been called to testify, "would have testified that the value of a" one-bedroom apartment in Roland Park was approximately $1,400 to $1,500 per month.

-13-

maintained a homeowner's insurance policy, which defined "insured" to include the policy holder and any "relatives" as well as "any other person under the age of 21 who is *in the care of*" the policy holder and a resident of the policy holder's household. *Id.* at 192 n.1 (emphasis added).

Henderson thereafter filed a lawsuit against Travis and Dawn, alleging that their negligent provocation of the strangers had brought about his injury. *Id.* at 192. Bonnie Twitchell's insurer, State Farm Fire and Casualty Company ("State Farm"), agreed to defend Travis but declined to defend his girlfriend, Dawn, "on the basis that she was not an 'insured' within the meaning of the insurance policy." *Id.*

After a default judgment was entered against Dawn, Henderson, in exchange for his promise not to proceed against her personal assets, obtained from Dawn an assignment of "all rights, benefits and claims she had against State Farm," whereupon he brought an action against State Farm. *Id.* In that suit, he alleged that it had breached the terms of its policy by failing to provide coverage for Dawn's negligence, as she was, according to Henderson, an "insured" under Bonnie Twitchell's homeowner's insurance policy, because she was "in the care of" Bonnie Twitchell at the time of the stabbing (and her purported negligence). *Id.*

After depositions were taken, Henderson and State Farm filed cross-motions for summary judgment. The trial court granted State Farm's motion, concluding that Dawn was not "in the care of" Bonnie Twitchell at the time of the alleged negligence, and denied Henderson's cross motion. *Id.* at 193. Although Michigan's intermediate appellate court

-14-

reversed the decision of the trial court, *Henderson v. State Farm Fire & Cas. Co.*, 572 N.W.2d 216 (Mich. Ct. App. 1997), *rev'd*, 596 N.W.2d 190 (Mich. 1999), Michigan's highest Court took a more cautious and, for our purposes, a more instructive approach.

The Michigan Supreme Court first found that the phrase "in the care of" was not ambiguous, reasoning that that phrase was "a colloquial or idiomatic phrase that is peculiar to itself and readily understood as a phrase by speakers and readers of our language." 596 N.W.2d at 192, 194. But, because it concluded that there was conflicting evidence as to whether Dawn was "in the care of" Bonnie Twitchell, it remanded with the following non-exclusive list of questions to be addressed by the trial court in determining whether "someone is 'in the care of' someone else":

> (1) is there a legal responsibility to care for the person;
>
> (2) is there some form of dependency;
>
> (3) is there a supervisory or disciplinary responsibility;
>
> (4) is the person providing the care providing substantial essential financial support;
>
> (5) is the living arrangement temporary or permanent, including how long it has been in existence and is expected to continue;
>
> (6) what is the age of the person alleged to be "in the care of" another (generally, the younger a person the more likely they are to be "in the care" of another);
>
> (7) what is the physical or mental health status of the person alleged to be "in the care of" another (a person with health problems is more likely to be "in the care" of another); and

-15-

(8) is the person allegedly "in the care of" another gainfully employed (a person so employed is less likely to be truly dependent on another)?

*Id.* at 195-96.

We agree with the Michigan Supreme Court that the term "in the care of" is not ambiguous and that the factors to be considered, as set forth in question form in *Henderson*, provide useful criteria for determining whether, under a specific set of facts, one person is "in the care of" another. Applying those factors to the case before us, it is clear that seven of the eight factors weigh against a finding that Vanderford was, at the time of the accident, "in the care of" the policy holder as: (1) the policy holder had no legal responsibility to care for Vanderford; (3) the policy holder had no supervisory or disciplinary responsibility over Vanderford; (4) the policy holder was not providing "substantial essential financial support" to Vanderford (or, at least, it was not clearly erroneous for the court below to so conclude); (5) Vanderford's living arrangement was temporary (or, at least, it was not clearly erroneous for the court below to so conclude); (6) Vanderford was a twenty-two-year-old emancipated adult; (7) Vanderford was in good health; and (8) Vanderford was working full-time and earning $26,000 per year. Only the second of the eight *Henderson* factors, that is, that there was "some form of dependency," tilts in favor of appellants' position, as the policy holder had, in fact, allowed Vanderford to live in his home for a modest rent and to drive his car to work. Thus, there was ample evidence to support the circuit court's conclusion that Vanderford was not "in the care of" the policy holder.

-16-

In sum, we discern no legal error in either the circuit court's interpretation of the contractual terms at issue or its conclusions that, at the time of the accident, Vanderford was not a "dependent person" or "in the care of" the policy holder.  We therefore affirm the circuit court's declaratory judgment, asserting that Vanderford was not an "insured person" under the Allstate policy at issue.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**