856 A.2d 626

**SOUTHERN MANAGEMENT CORPORATION, et al.**

v.

**KEVIN WILLES CONSTRUCTION COMPANY, INC. a/k/a Willes Construction.**

**No. 89, Sept. Term, 2003.**

Court of Appeals of Maryland.

Aug. 20, 2004.

526

---

Stephen C. Glassman (Steven A.Michael, Michael E. Winer, Glassman, Michael & Winer, Laytonsville, on brief), for petitioners/cross-respondents.

Timothy Guy Smith (Law Offices of Raden & Smith, P.C., Silver Spring, on brief), for respondent/cross-petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and ELDRIDGE, JOHN C. (retired, specially assigned), JJ.

CATHELL, J.

This case raises numerous issues pertaining to the correct application of the modern law of mechanic's liens in Maryland. The case arises out of a "Complaint to Establish and Enforce Mechanic's Lien" ("Initial Complaint"), filed on April 20, 2000, by the Kevin Willes Construction Company ("Willes Construction"), respondent in the present appeal, as against Baltimore Condo 2–8, LLC ("Baltimore Condo"), one of two owners of separate real property interests in the building against which the lien was claimed, Southern Management Corporation ("SMC"), alleged property manager for Baltimore Condo in respect to the building, and James M. Jost and Company, Inc. ("Jost"), construction manager for the building renovation and under contract with SMC, collectively, the petitioners in the present proceeding. On May 15, 2001, more than a year after filing the Initial Complaint, a year during which service of process against the petitioners was not effectuated, and after receiving a "Notification of Contemplated Dismissal" from the Circuit Court for Baltimore City pursuant to Maryland Rule 2–507,[1] Willes Construction filed an "Amended Complaint to Establish and Enforce Mechanic's Lien and Breach of Contract" ("Amended Complaint"). No additional defendants were named in the Amended Complaint. The Amended Com-

---

1. Specifically, the notification, which was issued on April 24, 2001, stated that the proceeding would be "Dismissed for Lack of Prosecution Without Prejudice." Maryland Rule 2–507 provides, in pertinent part:

 "**Rule 2–507. Dismissal for lack of jurisdiction or prosecution.**
 . . .
 (c) **For lack of prosecution.** An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry. . . .

 (d) **Notification of contemplated dismissal.** When an action is subject to dismissal pursuant to this Rule, the clerk, upon written request of a party or upon the clerk's own initiative, shall serve a notice on all parties pursuant to Rule 1–321 that an order of dismissal for lack of jurisdiction or prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule.

 (e) **Deferral of dismissal.** On motion filed at any time before 30 days after service of the notice, the court for good cause shown may defer entry of the order of dismissal for the period and on the terms it deems proper."

plaint added a breach of contract count. On August 6, 2001, Baltimore Condo, Jost and SMC filed a motion to dismiss Willes Construction's Amended Complaint. During a hearing before the circuit court on August 15, 2001, petitioners' motion to dismiss was denied. Immediately following the denial, the circuit court proceeded with a show-cause hearing, requiring the petitioners to "show cause" as to why a lien should not be established against the building in question. On December 19, 2001, the circuit court entered a "Final Order Establishing Mechanic's Lien and Directing Sale of Property" ("Final Order").

Petitioners thereafter appealed the decision of the circuit court to the Court of Special Appeals of Maryland. On August 15, 2003, in an unreported opinion, the intermediate appellate court modified the order of the circuit court, changing it from a "final order" to an "interlocutory order." While this holding favored petitioners, other determinations were made by the intermediate appellate court in favor of Willes Construction. Petitioners then filed a Petition for Writ of Certiorari with this Court and Willes Construction filed a cross-petition. On December 11, 2003, we granted both the petition and the cross-petition. *Southern Management v. Willes Construction*, 378 Md. 613, 837 A.2d 925 (2003). The parties presented the following questions for our review:

Petitioners ask:

"I. Did the Court of Special Appeals commit reversible error by holding that where work is performed throughout an eight (8) unit condominium building, including the common areas, and is not allocated among the units or the common elements, the notice provisions prefatory to filing a mechanic's lien against the entire condominium regime (Real Property Article § 9–104(d)) are satisfied by providing notice to either the property manager of the condominium entity of record or to one but not all of the unit owners holding title to individual units within the condominium?

"II. Did the Court of Special Appeals commit reversible error by sustaining the Circuit Court's entry of a Final Order for Mechanic's Lien without allocating the lien among the common elements and the condominium units of the condominium regime or in failing to identify which units were subject to having had work performed on them as required by the 'Horizontal Property Act,' Real Property Article Section 11–118 of the Maryland Code?

"III. Did the Court of Special Appeals commit reversible error in sustaining the Circuit Court's denial of Petitioner's Motion to Dismiss where there was substantial evidence that Respondent's Complaint to Establish and Enforce a Mechanic's Lien was filed more than 180 days from the day Respondent's contract was terminated and all of its work benefitting the project ended? If no such error was committed by the Court of Special Appeals in determining the Circuit Court's denial of this argument was not clearly erroneous, did the Court of Special Appeals commit reversible error by not requiring the issue of what was the time barred date for determining whether Respondent's Complaint to establish a mechanic's lien was filed within 180 days be remanded to the Circuit Court for a full evidential hearing?

"IV. Did the Court of Special Appeals commit reversible error in overruling Respondent's Motion to Dismiss and in entering a Mechanic's Lien when the lien was not clearly established within one (1) year from the filing of the initial complaint as required by Real Property Article 9–109?[2]

---

**2.** This issue is the most complex issue presented, but has not been extensively briefed and argued. Additionally, the petitioner presented no due process arguments such as were presented in *Barry Properties, Inc. v. Fick Bros. Roofing Co.*, 277 Md. 15, 353 A.2d 222 (1976), nor was any extensive legislative history provided the Court. In light of our determination in this case it is not necessary to address it further. However, without deciding the issue one way or the other we do not

"V. Did the Court of Special Appeals commit reversible error by sustaining the Circuit Court's entry of a Final Order of Mechanic's Lien when for monetary consideration Respondent prepared, executed and delivered, in writing, a Release of Liens for all work and services performed and materials furnished, where Respondent specifically waived any right to make the claim it has asserted in the Circuit Court and where the Respondent waived its right to establish the mechanic's lien?"

Willes Construction asks:

"Did the Court of Special Appeals commit reversible error in modifying the Final Order of Mechanic's Lien to [an] Interlocutory Order and remanding the case to the Trial Court for further proceedings consistent with that opinion?" [Alteration added.][3]

We hold that a condominium regime lawfully existed at the building that is the subject of this case at the relevant times in question and, as such, notice was required to be given to all condominium unit owners under § 9–104 of the Real Property Article and all such owners had to be parties to the case before a mechanic's lien could be established as against the entire building and that the circuit court further erred in entering an order establishing a mechanic's lien where the lien was not allocated among the individual unit owners according to their percentage interests in the common elements as is required under § 11–118 of the Real Property Article. We need not decide the remaining issues.

---

necessarily approve of the Court of Special Appeals' holding. The ultimate resolution of this issue must await a fuller and more extensive presentation in another case.

3. We note that the Court of Special Appeals appears to have been correct in finding that the circuit court's order, had it been legally correct, should have been, under the procedural circumstances, an interlocutory order and not a final order.

## I. Facts

### A. Relevant pre-claim facts

In August, 1999, Jost, construction manager for SMC, entered into an agreement with Willes Construction whereby Willes Construction was to provide demolition and abatement work for renovation of a building located at 118 N. Howard Street in Baltimore City ("Lexington Towers"). The building consisted of eight condominium units with general and limited common areas. Seven of the units (in which apparently 173 residential units are now contained) were owned by an entity known as Baltimore Condo 2–8, LLC ("Baltimore Condo"),[4] with the remaining unit, which apparently comprised the first floor of the building, owned by an entity known as RA Baltimore Trust ("RA Trust").[5] Ultimately, the mechanic's lien action in the present case arose out of this contract. Work was done to both the individual units and to the general common elements.

On September 30th, upon receiving a payment it had requested, Willes Construction executed a Partial Release of Liens ("Release"), which was signed by Willes Construction's president, Kevin Willes. The Release identified the property covered by the Release, stating that it was "real estate known and identified as 118 North Howard Street (Old Hecht Company Building), located at 118 North Howard Street, Baltimore, Maryland, and owned by Balto. Condo 2–8, LLC and RA Baltimore Trust." It then stated, in pertinent part:

> "The UNDERSIGNED, for and in consideration of the sum One hundred fourteen thousand nine hundred three ($114,-903) . . . does hereby waive and release any and all liens or claims or right of lien on the aforementioned property and

---

4. The building at interest presently exists as "The Atrium at Market Center," an upscale 173–unit apartment and retail complex, with SMC as its property manager. The apartments do not appear to be 173 separate condominium units. They are part of the seven condominium units originally owned (and perhaps still owned) by Baltimore Condo. Apparently the 173 units are rental units.

5. RA stands for Rite–Aid, a national chain of pharmacy stores.

improvements thereon, and on monies or other consideration due or to become due on account of labor or services, materials, fixtures, or apparatus heretofore furnished."

On the morning of Monday, October 4, 1999, Willes Construction's services as a subcontractor were terminated in accordance with the terms of the contract. The issue of whether that termination was proper is not before this Court in this case.

Thereafter, Willes Construction drafted a "Notice to Owner or Owner's Agent of Intention to Claim a Lien" for "[d]emolition work, removal of escalators, electrical wiring, plumbing, ironwork, mechanical systems, asbestos abatement in limited areas together with dumpsters and labor to perform the above work" for the period from August 1999 through October 25, 1999. On November 23, 1999, this notice was served only upon SMC, Jost, and Baltimore Condo.[6] It was not served upon RA Trust, an owner of one of the condominium units comprising one floor of the Lexington Towers. On April 20, 2000, Willes Construction filed its Initial Complaint to establish and to enforce a lien, against the same entities—again not including RA Trust, asking that a lien be established against Lexington Towers in the amount of $267,842.37.

More than a year later, after being notified that the case was going to be dismissed for lack of prosecution pursuant to Maryland Rule 2–507, Willes Construction, on May 12, 2001, filed an Amended Complaint, which merely added a count for breach of contract to the original allegations. At this point, more than a year after its original complaint, with requests for the issuance of summons attached, had been filed, and with no other activity indicated by the docket entries, no lien had been established. Petitioners thereafter filed an answer to the

---

**6.** A Notice of Intent to Lien, such as that sent by Willes Construction, normally is not initially "filed" anywhere, but is really just a letter notice required to be sent or delivered by the lien claimant to the owner of the property against which the lien is sought. The claimant keeps a copy of this notice as proof that notice was sent to the owner. The copy of that notice generally is attached as an exhibit when the complaint to establish the lien is filed in the circuit court.

Amended Complaint and, on August 6, 2001, filed a motion to dismiss on several grounds, including that the Amended Complaint was defective in that it and the pre-filing notice did not properly notify the owners, and that the claim to establish and enforce a mechanic's lien was made more than one year after the filing of the Initial Complaint on April 20, 2000.

## B. Circuit Court proceedings

On August 15, 2001, a hearing on the motion to dismiss was held in the Circuit Court for Baltimore City. The circuit court denied petitioners' motion, orally stating:

"It's the argument of the Defendant that the Court should dismiss the Amended Complaint to Establish and Enforce the Mechanic's Lien based on the plain language of Section 9–109 of the Real Property Article of the Maryland Annotated Code.[7] It is the Defendant's position that the plain language of the statute rules and maintains that in sentence one of that statute which provides the right to enforce any lien established under this subtitle expires at the end of one year from the day on which the petition to establish the lien was first filed. The Defendant maintains and the Court has reviewed it and agree that clearly this was filed, that is the Petition to Establish and Enforce Mechanic's Lien on or about April 20, 2000. The Defendant maintains that in as much as it is today August 15th, it is more than one year from the date of filing and, therefore, this Court must grant the Motion to Dismiss. The Plaintiff argues, however, that the sentence is really clarified and expanded by the remain-

---

7. Md.Code (1974, 2003 Repl.Vol.), § 9–109 of the Real Property Article provides:

"The right to enforce any lien established under this subtitle expires at the end of one year from the day on which the petition to establish the lien was first filed. During this time the claimant may file a petition in the lien proceedings to enforce the lien or execute on any bond given to obtain a release of the land and building from the lien. If such petition is filed within the one-year period, the right to a lien or the lien, or any bond given to obtain a release of lien, shall remain in full force and effect until the conclusion of the enforcement proceedings and thereafter only in accordance with the decree entered in the case."

der of the portion of Section 9–109. That provides that, 'During this time the claimant may file a petition in the lien proceedings to enforce the lien or execute on any bond given to obtain a release of the land and building from the lien.' Clearly here the Plaintiff filed that Petition in the lien proceedings to enforce the lien. The critical part of the statute in this Court's mind is the next sentence which states as follows: 'If such petition is filed within the one-year period the right to a lien or the lien, or any bond given to obtain a release of lien, shall remain in full force and effect until the conclusion of the enforcement proceedings and thereafter only in accordance with the decree entered in the case.' Accordingly, it's based on that language that the Court denies the Defendant's Motion to Dismiss the Amended Complaint at this time. I will say that on its face the Defendant is right, if the Court were just to read the first sentence of Section 9–109 but because of the third sentence the Court does find clearly that the Petition was filed within the one-year period and therefore the right to a lien needs to remain in effect until the conclusion of the enforcement proceedings. Because specifically the Plaintiff filed not only the Petition but the right to enforce the lien the Court finds that that section controls, and for that reason the Court will deny the Motion to Dismiss the Amended Complaint." [Footnote added.]

After denying the motion to dismiss, the circuit court proceeded to the show-cause hearing portion of the proceedings.[8] Willes Construction claimed that it was owed money for change orders, that it had performed more work than claimed in its Application and Release, and that, notwithstanding its termination on October 4, 1999, it had continued to perform demolition and abatement work at the project site up until

---

**8.** It is at such a hearing that an owner must "show cause ... why a lien upon the land or building and for the amount described in the petition should not attach." Section 9–106(a) of the Real Property Article. At this point no lien has yet been established.

At the time the joint petition to establish and enforce a mechanic's lien was filed, there was nothing to enforce.

October 25, 1999. Dwayne Massingale, a qualified expert on demolition, testified on behalf of Willes Construction and stated that, following a visit to the project site on October 13, 1999, he was of the opinion that Willes Construction had completed seventy percent (70%) of the work contained in the original contract.

In response, petitioners presented evidence that tended to show the following: (1) Willes Construction was paid all sums due and owing through September 30, 1999, less minimal retainage; (2) Willes Construction prepared, executed and submitted both the Application and Release for all work done and materials provided through September 30, 1999; (3) Willes Construction was terminated one working day after submission of the Application and Release; (4) Willes Construction returned to the job site after termination for the purpose of gathering loose scrap metal and to clean up equipment and tie up other loose ends; and (5) as of October 4, 1999, Willes Construction had only completed thirty to thirty-five percent (30–35%) of the demolition work under the contract.[9]

On August 30, 2001, the circuit court found that Willes Construction was entitled to the establishment of a mechanic's lien and orally stated, in pertinent part:

"[T]he Court has stated at its hearing and states now that the Court disagrees with [petitioners'] reading of the release ... and the Court does not find that there was, whatsoever, a knowing and voluntary release of all claims [in the Release]. It was simply a release for the work done by [Willes Construction], which is reflected in the amount of the consideration.... [Willes Construction] presented through the testimony of ... its expert ... that approximately 70% of the entire contract that was agreed upon was completed. [Petitioners maintain] that between 30 and 35% of that work has, in fact, been completed. Clearly in the eyes of the

---

9. Attesting to this assertion was John R. Lynn, vice president of Jost, who was qualified as an expert in "construction and renovation" and "demolition."

Court, a lien should be established and attached as a matter of law. . . . In connection with this case the Court finds that there is no genuine dispute as to any material fact and that a lien should attach as a matter of law." [Alterations added.]

Thereafter, on December 19, 2001, the circuit court issued a "Final Order," which established a lien in the sum of $200,273.00 plus interest "against certain land and improvements thereon owned by the Defendant, Baltimore Condo 2–8 LLC," stated to be the entirety of "Lexington Towers, 118 North Howard Street, Baltimore, Maryland . . . a nine story brick and glass apartment building."

### C. Court of Special Appeals' decision

The decision of the circuit court was challenged, for the most part unsuccessfully, by petitioners in the Court of Special Appeals. The questions presented to that court, of which there were six, read almost verbatim to the ones brought before us in the present case.[10] We shall address only those issues we view as determinative.

With respect to petitioners' assertion that the circuit court erred in granting a "Final Order" in that the notice of the intention to file a mechanic's lien and the complaint to establish the mechanic's lien failed to name all owners of the property in question, the intermediate appellate court held that "[o]nce notice was sent to Southern Management, all remaining owners were put on notice." In reaching that conclusion, the intermediate appellate court relied on § 9–104(d) of the Real Property Article, which provides that "[i]f there is more than one owner, the subcontractor may comply with this section by giving notice to any of the owners."

---

**10.** The sixth question presented to the Court of Special Appeals, which questioned the entering of a final order by the circuit court instead of an interlocutory order, has been brought to this Court by Willes Construction in its cross-petition, as the intermediate appellate court agreed with petitioners and modified the circuit court's order from a final order to an interlocutory order. Willes Construction challenges this action by the Court of Special Appeals.

On the issue of whether the circuit court erred in not allocating "the lien among the common elements and the condominium units ... as required by ... Real Property Section 11–118," the Court of Special Appeals found that petitioners "failed to present evidence that a condominium regime was ever created in accordance with Section 11–102 of the Real Property Article...." Therefore, the circuit court "was not required to allocate amongst the owners the proportion of their liability to [Willes Construction]" (alteration added).

When presented with the issue of whether the circuit court erred in entering a "Final Order" when the lien was not established within one year from the filing of the initial complaint, as petitioners alleged was required under § 9–109 of the Real Property Article, the Court of Special Appeals held that, "because [Willes Construction's] initial complaint was a complaint seeking to establish [and enforce] a mechanic's lien, [Willes Construction] was entitled to obtain a lien until the circuit court issued a final ruling on the matter" (alterations added).

Petitioners' sole victory in the intermediate appellate court concerned the issue of whether there existed a genuine dispute of material fact in regard to the percentage of work completed by Willes Construction under the contract. The court found that, "[b]ecause there was a dispute as to what percentage of work had actually been completed, at the relevant point, the [circuit court] should not have issued a final order of mechanic's lien" (alteration added). Thereafter, the Court of Special Appeals modified the Final Order to an interlocutory order.

## II. Standard of Review

■ On appellate review, this Court may set aside the judgment of the trial court based on the factual findings of the trial court only when those findings are "clearly erroneous." [11] Maryland Rule 8–131(c) provides:

---

11. Although this case comes to us by way of certiorari to the Court of Special Appeals, we are in reality evaluating the propriety of the

"When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

Our review on matters of law, however, is more expansive. The "clearly erroneous" portion of Md. Rule 8–131(c) does not apply to a trial court's determinations of legal questions or conclusions of law based upon findings of fact. *See Helinski v. Harford Memorial Hospital, Inc.,* 376 Md. 606, 614–15, 831 A.2d 40, 45 (2003); *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990); *Davis v. Davis,* 280 Md. 119, 124, 372 A.2d 231, 233, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). Therefore, we shall apply the law as we discern it to be.

### III. Discussion

#### A. Notice of Mechanic's Lien to Individual Condominium Unit Owners

■ Petitioners first argue that the circuit court erred in granting a "Final Order" in that the Notice of Intention to File a Mechanic's Lien was not given to all owners and the Complaint (both Initial and Amended) was not filed against all owners of the separate and distinct properties in question prior to the establishment of the lien. Petitioners base this argument on their claim that a condominium regime existed at Lexington Towers, a form of property ownership which involves the individual ownership of condominium units as well as percentage ownership of common elements of the condominium. Because there was some contention in the lower courts as to whether a condominium regime did in fact exist at the project site, this Court will need to ascertain whether the record reflects that a condominium regime was established

judgment of the circuit court in entering the "Final Order." Therefore, our standard of review shall be that which is generally applied on review of trial court decisions.

under Maryland law before we reach the issue of the propriety of Willes Construction's notice.

Md.Code (1974, 2003 Repl.Vol.), § 11–102 of the Real Property Article governs the method for establishing a condominium regime in Maryland. The statute states, in pertinent part:

"(a) *By recording declaration, bylaws and plat; exception.*—(1) The fee simple owner or lessee under a lease that exceeds 60 years of any property in the State may subject the property to a condominium regime by recording among the land records of the county where the property is located, a declaration, bylaws, and condominium plat that comply with the requirements specified in this title."

The record before us plainly establishes that a condominium regime was created at the project site by the recordation of a "Condominium Regime Declaration" on November 24, 1997. This Declaration includes all of the elements required by § 11–102 of the Real Property Article, *i.e.,* bylaws and plat description, and was "recorded among the Land Records of Baltimore City in Liber P.M.B. No. 6861, page 221 et seq." The "301 West Lexington Street Condominium," as it is named in the Declaration, was established by Rite Aid of Maryland, Inc., a Maryland corporation. On December 18, 1997, a deed concerning Baltimore Condo's purchase of several units within the condominium was filed in the land records and it stated the following:

### "THIS DEED

Made this 25 day of November, 1997, by and between **RITE AID OF MARYLAND, INC., a Maryland corporation** ... and **BALTIMORE CONDO 2–8 LLC, a Delaware Limited Liability Company**....

**WITNESSETH,** that in consideration of the sum of [$50,-000.00] and other good and valuable consideration, the said party of the first part does grant, bargain, sell and convey unto the party of the second part in fee simple:

**ALL THOSE CERTAIN** Units, being Units in 301 West Lexington Street Condominium as designated in a Declara-

tion of Condominium ... and Situate in Baltimore City, State of Maryland, all as more fully described on Exhibit 'A' attached hereto and made a part hereof.

**UNDER AND SUBJECT** to matters of record, to the extent valid and enforceable and still applicable to the above described premises.

**TOGETHER** with a proportionate undivided interest in the Common Elements as set forth in the Declaration and with all and singular the buildings and improvements, streets, alleys, passages, ways, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of it, the said party of the first part, in law, equity, or otherwise, of, in, and to the same.

**AND** the said party of the first part covenants that it will warrant specially the property hereby conveyed, **SUBJECT** as aforesaid; and that it will execute such further assurances of said land as may be requisite.

**THE** party of the first part certifies that this conveyance is not part of a transaction in which there is a sale, lease, exchange, or other transfer of all or substantially all of the property and assets of the Corporation."

The "LEGAL DESCRIPTION" of the property conveyed, also filed in the land records, was described thus:

"All of that property situate in the City of Baltimore, State of Maryland being known and designated as condominium Units 200 thru 800 in 301 West Lexington Street Condominium ... established by Rite Aid of Maryland, Inc. under the provision of Title 11 of the Real Property Article, Annotated Code of Maryland, as amended, by Condominium Declaration dated November 25, 1997 and recorded among the Land Records of the City of Baltimore, Maryland in Liber P.M.B. No. 6861, page 221 et seq. and the By–Laws of the Condominium Regime recorded November 25, 1997 in Liber

P.M.B. No. 6861 page 241, et seq. and by the Condominium Plat recorded on the aforesaid Land Records in condominium Plat Pocket Folder SEB No. 329.

"Together with all the rights, privileges and appurtenances incident to said Unit as contained in the aforesaid condominium Declaration."

Likewise, on December 18, 1997, another deed and legal description pertaining to the "301 West Lexington Condominium" was filed in the Land Records of the City of Baltimore, these documents concerning RA Trust and the conveyance to it of "Unit 100" in the condominium regime in consideration of the sum of $3,450,000. The "LEGAL DESCRIPTION" of RA Trust's purchased property refers to:

"All of that property situate in the City of Baltimore, State of Maryland being known and designated as condominium Unit 100 in 301 West Lexington Street Condominium ... established by Rite Aid of Maryland, Inc. under the provision of Title 11 of the Real Property Article, Annotated Code of Maryland, as amended, by Condominium Declaration dated November 25, 1997 and recorded among the Land Records of the City of Baltimore, Maryland in Liber P.M.B. No. 6861, page 221 et seq. and the By–Laws of the Condominium Regime recorded November 25, 1997 in Liber P.M.B. No. 6861 page 241, et seq. and by the Condominium Plat recorded on the aforesaid Land Records in condominium Plat Pocket Folder SEB No. 329.

"Together with all the rights, privileges and appurtenances incident to said Unit as contained in the aforesaid condominium Declaration."

The Court of Special Appeals, in its unreported opinion, stated that "[t]he mere assertion that a condominium regime was created, without any evidence to support that assertion, is not enough to establish that a condominium regime was created." We conclude, however, that evidence as to the creation of a condominium regime was before the court, as can plainly be seen in the aforementioned "Condominium Regime Declaration," deeds and legal descriptions of the condominium

units conveyed to both Baltimore Condo and RA Trust, which are included in the record before us. These filed documents, in effect, legally created a condominium regime in which RA Trust was the unit owner of "Unit 100," which is located on the first floor of the building made the subject of the present mechanic's lien action, and Baltimore Condo became the unit owner of "Units 200 through 800," which are located on the second through eighth floors of the building.

Our determination, from the record before us, that a condominium regime did in fact exist at Lexington Towers at the time Willes Construction gave its notice and later filed its complaint to establish a mechanic's lien necessarily brings this Court back to petitioners' initial question: Whether notice of the intention to file a mechanic's lien and a complaint must be given to all owners in a condominium regime prior to the establishment of a lien in the courts? For the reasons stated below, we hold that it does.

 Mechanic's liens, as they exist in this State, are creatures of statute, and, thus, to be entitled to a mechanic's lien against property in Maryland, a claimant must satisfy the procedural criteria set forth in the statute. *See Aviles v. Eshelman Electric Corp.*, 281 Md. 529, 536, 379 A.2d 1227, 1231 (1977); *see also Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.*, 228 Md. 297, 301, 179 A.2d 683, 685 (1962) (stating that "a mechanics' lien is a claim created by statute and is obtainable only if the requirements of the statute are complied with"). As this Court has noted in previous cases, "the first mechanics' lien law enacted in the United States was enacted by the General Assembly of Maryland in 1791 at the urging of Thomas Jefferson and James Madison, who championed such legislation to stimulate and encourage the rapid building of the City of Washington." *Freeform Pools*, 228 Md. at 302 n. 1, 179 A.2d at 686 n. 1 (1962); *see also Barry Properties, Inc. v. Fick Bros. Roofing Co.*, 277 Md. 15, 17–18, 353 A.2d 222, 224–25 (1976); *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*, 274 Md. 307, 313, 334 A.2d 526, 530 (1975); *O–Porto Construction Co. v. Devon/Lanham, LLC*, 129 Md.App. 301, 304–06, 741 A.2d 576,

577–78 (1999). Mechanic's liens are currently governed by Md.Code (1974, 2003 Repl.Vol.), §§ 9–101 to 9–114 of the Real Property Article and Maryland Rules (2004) 12–301 through 12–308. Maryland Rule 12–302 sets forth the requirements for bringing a mechanic's lien action and states that "[t]he plaintiff shall bring an action to establish a mechanics' lien against the owner of the land against which the lien is sought to be established." Maryland Rule 12–302(c). Maryland Rule 12–301(b)(6) defines "Owner" as "the owner of record of the land except that, when the contractor executes the contract with a tenant for life or for years, 'owner' means the tenant." *See also* § 9–101(f) of the Real Property Article (defining "Owner," for mechanic's lien purposes, in an identical manner). Of interest in this case is that there is not just one owner of record of the separate real property entities that comprise Lexington Towers. As indicated above, *there are at least two owners of record* of separate and different condominium units at Lexington Towers: Baltimore Condo and RA Trust. These owners own separate and distinct parcels of property. While through their ownership interests in the common elements they may be co-owners of the general and limited common elements, as to their respective condominium units, they are the respective sole owners.

■ Regarding what each "owner" in a condominium setting "owns," § 11–106(a) of the Real Property Article states that "[e]ach unit in a condominium has all of the incidents of real property." *See Ridgely Condominium Ass'n v. Smyrnioudis,* 343 Md. 357, 370, 681 A.2d 494, 501 (1996). Therefore, in the case *sub judice,* the "land" mentioned in both Title 9 of the Real Property Article and Title 12 of the Maryland Rules, when discussed in the context of a condominium, are the separate units of fee simple ownership within the condominium regime with each condominium unit akin to a separate parcel of land. That is, each unit owner in a condominium regime is a *separate, individual owner* of that unit of real property.[12]

---

12. Of course, they may also be tenants in common with respect to the common elements of the condominium. *See* 11–107(a) of the Real

 Section 9–104 of the Real Property Article provides the notice requirements that a subcontractor must give to the owner(s) of property before seeking establishment of a mechanic's lien against the property. As we stated in *National Glass, Inc. v. J.C. Penney Properties, Inc.,* 329 Md. 300, 302 n. 2, 619 A.2d 528, 529 n. 2 (1993), "[t]he notice is required for the protection of the owner of the property. On receipt of the notice, the owner is afforded an opportunity to withhold, from the sums due the contractor, the amount the owner ascertains to be due the subcontractor" (citations omitted). Section 9–104(a) states that:

"(a) *Notice required to entitle subcontractor to lien.*—(1) A subcontractor doing work or furnishing materials or both for or about a building other than a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle unless, within 120 days after doing the work or furnishing the materials, the subcontractor gives written notice of an intention to claim a lien substantially in the form specified in subsection (b) of this section."

 As stated in § 9–104(a), the form of the written notice is to bear some resemblance to that found in § 9–104(b), entitled "Form of notice," which specifically requires that such notice must be given to the "Owner or Owner's Agent." Willes Construction argues that it did not have to give notice to all unit owners because, under § 9–104(d), "[i]f there is more than one owner, the subcontractor may comply with this section by giving notice to any of the owners." While this contention might be correct if Baltimore Condo and RA Trust were tenants in common of a single unit, or a single parcel of property, they are not here. Each entity owns separate, individual units—separate parcels of real property—in the condominium regime. RA Trust is the *sole owner* of "Unit

Property Article; *see also Ridgely Condominium Ass'n, Inc. v. Smyrnioudis,* 343 Md. at 358–59, 681 A.2d at 495 (stating that "a condominium owner ... holds a hybrid property interest consisting of an exclusive ownership of a particular unit or apartment and a tenancy in common with the other co-owners in the common elements").

100," just as Baltimore Condo is the *sole owner* of "Units 200 through 800." Because there were no co-owners in respect to the separate units, in that Baltimore Condo cannot be said to have an ownership interest in the unit owned by RA Trust, just as RA Trust cannot claim an ownership interest in the units owned by Baltimore Condo, § 9–104(d) is inapplicable.[13] Therefore, the intermediate appellate court's reliance on that statute in its holding that "[o]nce notice was sent to Southern Management, all remaining owners were put on notice" was incorrect. In this case, notice to one was not notice to all.

■ Similarly, we also are unpersuaded that Willes Construction's notice to SMC, the property manager of the project site, was notice to all condominium unit owners, under agency principles, of Willes Construction's intention to claim a mechanic's lien. While the record does indicate that SMC was acting as Baltimore Condo's agent for the purposes of the renovation project, the record is entirely unclear as to whether the same can be said for RA Trust, *i.e.*, that SMC was acting as its agent for the purposes of the renovation project. While, as we stated, notice may be given to an "owner's agent" under § 9–104(b) of the Real Property Article, the record lacks clear evidence indicating that such an agency relationship existed between RA Trust and SMC.

■ Although this is our first opportunity to address the issue of who is to be provided notice of a mechanic's lien claim in a condominium setting, at least one of our sister states has already done so. In the case of *Papa v. Greenwich Green, Inc.*, 177 Conn. 295, 416 A.2d 1196 (1979), the Supreme Court of Connecticut was faced with the question of whether notice must be given to all unit owners in a condominium regime when a mechanic's lien is sought against that condominium. A

---

**13.** As an example of when notice, pursuant to § 9–104, to one owner would be sufficient, and when not, in the context of a condominium, suppose A and B are co-owners of Unit One in a condominium. Notice to A would constitute notice to B. If however, only A owns Unit One and only B owns Unit Two, notice to A would be sufficient as to Unit One—but it would have no effect whatsoever in respect to the notice requirements for Unit Two.

Connecticut state statute provided that " '[n]o person ... shall be entitled to claim (a mechanic's lien), unless ... he gives written notice to the owner of such building, lot or plot or land that he ... intends to claim a lien ....' " *Greenwich Green,* 177 Conn. at 299, 416 A.2d at 1198. The contractor in that case, upon completion of its construction of 63 condominium units, filed a certificate of mechanic's lien with the town clerk, while at the same time serving a copy of the certificate upon the developer, Greenwich Green. No service of the certificate, however, was made upon 31 already existing condominium unit owners.

On its appeal to the state supreme court, the contractor claimed that "the trial court erred in holding that [the state statute] requires service of a certificate of mechanic's lien not only upon those persons for whom the work was performed, but also upon all persons having an ownership interest in the liened property at the time the lien was filed," and further argued that "the legislature did not intend to impose 'such a broad service requirement upon mechanics and materialmen at the time they file their lien.' " *Id.* at 299–300, 416 A.2d at 1198–99 (alteration added).

The Supreme Court of Connecticut disagreed with the contractor, stating that "when an individual's property right might be adversely affected and where he has a constitutional prerogative to a timely hearing, such an individual should be provided with a fair and suitable notice of the recording of a mechanic's lien against that property." *Id.* at 302, 416 A.2d at 1200. The court further held that the term "owner," as used in the relevant state statutes, included "the individual owners of condominium units." *Id.* at 303, 416 A.2d at 1200.

We agree with the decision of the Supreme Court of Connecticut in regard to whether notice of a mechanic's lien needs to be given to all unit owners in a condominium setting. To uphold the "Final Order" of the circuit court, which provides for the sale of the *entire* Lexington Towers building, a sale which would involve both the individual interests of unit owners as well as *pro rata* interests in the common elements,

without ever providing RA Trust with notice of the intent to claim a mechanic's lien and without ever having filed a complaint against it, would be to violate the due process rights of RA Trust.

Moreover, Willes Construction itself *was aware of the ownership interest that RA Trust possessed over a unit in the building,* despite claims to the contrary made in its brief and at oral argument, for the Release it executed, which is a part of the record in this case, acknowledges that the building is "owned by Balto. Condo 2–8, LLC and RA Baltimore Trust." RA Trust's interest in Unit 100 cannot be made subject to a mechanic's lien *until it receives the required notice and until and unless it is made a party to the lien proceeding.*[14] By the same token, those who were named as

---

14. RA Trust was, in effect, a "necessary party" to the mechanic's lien proceedings, as the proceedings sought the establishment of a mechanic's lien against the entire Lexington Towers building, of which RA Trust was a unit owner. Maryland Rule 2–211 provides, in part:

"**Rule 2–211. Required joinder of parties.**

(a) **Persons to be joined.** Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) *disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action* or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff." [Emphasis added.]

It is unquestionable that a sale of Lexington Towers pursuant to the "Final Order" would "impair or impede" RA Trust's "ability to protect a claimed interest," *i.e.,* its ownership interest in Unit 100. As such, RA Trust was a necessary party to the mechanic's lien action and was required to be joined under Maryland Rule 2–211(a). The real property interests of RA Trust cannot be divested without notice to it and without it being made a party.

While Willes Construction takes issue with petitioners' claim that RA Trust was a necessary party, arguing that because the claim was never raised in petitioners' Answer, nor at the show-cause hearing, it cannot be brought now on appeal, this Court is of a different opinion. As we

parties to Willes Construction's mechanic's lien proceeding, *e.g.,* Baltimore Condo, under the lien statute, cannot be held responsible for the work performed on property exclusively owned by non-parties to the mechanic's lien action. The Legislature has provided as much by statute. The Horizontal Property Act of the Maryland Code, § 11–118 of the Real Property Article, provides that condominium units and common elements are subject to the establishment of a mechanic's lien, but only as follows:

"(a) *In general.*—Any mechanics' lien or materialmen's lien arising as a result of repairs to or improvements of a unit by a unit owner shall be a lien against the unit.

(b) *Payment of lien.*—Any mechanics' or materialmen's lien arising as a result of repairs to or improvements of the common elements, *if authorized in writing by the council of unit owners,* shall be paid by the council as a common expense and until paid shall be a lien against each unit in proportion to its percentage interest in the common elements. On payment of the proportionate amount by any unit owner to the lienor or on the filing of a written undertaking in the manner specified by Maryland Rule 12–307, the unit owner is entitled to a recordable release of his

explained in *Mahan v. Mahan,* 320 Md. 262, 272–73, 577 A.2d 70, 75 (1990), while "[i]t would have been preferable to have the question of the required joinder ... squarely presented to the trial court at an earlier stage of the proceeding. The failure to do so ... is not fatal. Failure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties, *and may be raised at any time, including for the first time on appeal*" (emphasis added). *See* Maryland Rules 2–322(b)(3) and 2–324(a); *see also Kaliopulus v. Lumm,* 155 Md. 30, 37–38, 141 A. 440, 444 (1928); *Bodnar v. Brinsfield,* 60 Md.App. 524, 531, 483 A.2d 1290, 1294 (1984).

In the case *sub judice,* while it would have been preferable for either petitioners or Willes Construction to have presented the issue of the required joinder of RA Trust in the mechanic's lien proceedings before the circuit court, the failure to do so does not constitute a waiver of petitioners' right to assert this claim. Additionally, the owners who were not given notice would have no practical way to protect their interests if other parties, *i.e.,* Baltimore Condo, chose not to raise the joinder issue at the trial level. Therefore, petitioners were permitted to raise this argument on appeal, which they did on appeal to the Court of Special Appeals and thereafter on petition to this Court.

unit from the lien and the council of unit owners is not entitled to assess his unit for payment of the remaining amount due for the repairs or improvements.

(c) *Personal liability of unit owner.*—Except in proportion to his percentage interest in the common elements, a unit owner personally is not liable (1) for damages as a result of injuries arising in connection with the common elements solely by virtue of his ownership of a percentage interest in the common elements; or (2) for liabilities incurred by the council of unit owners. On payment by any unit owner of his proportionate amount of any judgment resulting from that liability, the unit owner is entitled to a recordable release of his unit from the lien of the judgment and the council of unit owners is not entitled to assess his unit for payment of the remaining amount due." [Emphasis added.]

It was established at the trial court, and pointed out on appeal, that the work done by Willes Construction at the project site included demolition involving both the individual units [15] as well as the common areas/elements of the building. Therefore, under § 11–118(a), Baltimore Condo cannot be made responsible, pursuant to a mechanic's lien claim, for the work done on RA Trust's individual unit or *vice versa.* As stated, however, the "Final Order" established the mechanic's lien against the entire "nine story brick and glass" building, constituting the entirety of Lexington Towers, but the notice and the proceedings had only named Baltimore Condo as the owner.

Apropos of the work done by Willes Construction on the common elements of the condominium, this Court recently stated in *Jurgensen v. New Phoenix Atlantic Condominium,* 380 Md. 106, 115, 843 A.2d 865, 870 (2004), that "in regard to

---

**15.** Pursuant to questioning by this Court at oral argument, counsel for Willes Construction explained that the only things remaining of the building post-demolition were the exterior walls of the building. Everything else, including the interior walls of the condominium units, was removed or demolished.

the common elements, [a unit owner] can be said to have a tenancy in common with all of the other Condominium unit owners" (alteration added). *See also* § 11–107(a) of the Real Property Article (stating that "[e]ach unit owner shall own an undivided percentage interest in the common elements equal to that set forth in the declaration"). Because there is more than one owner of the *same* property, *i.e.,* the common elements of the condominium property, under § 9–104(d) of the Real Property Article notice of the intention to claim a mechanic's lien (if the work has been authorized by the council of unit owners),[16] when given to Baltimore Condo, an owner, might give notice to all other condominium unit owners, *but only in relation to the common elements of the condominium.* But, as is stated in § 11–108(b) of the Real Property Article, in order for a lien *to be established* as against the common elements of a condominium, the repairs which lead to a later claim for a mechanic's lien must be "authorized in writing by the council of unit owners" of the condominium. *The record* before this Court is devoid of any evidence that any entity comprising a "council of unit owners" ever authorized the renovations that were underway in October 1999.

Even assuming *arguendo* that a "council of unit owners" did, in fact, authorize the renovations performed by Willes Construction, an individual unit owner such as Baltimore Condo shall only have a lien established against its unit "in proportion to its percentage interest in the common elements." Section 11–108(b) of the Real Property Article. When the "Final Order" was given, absent from the order was any allocation of the interest that Baltimore Condo had in the common elements. Instead, the circuit court merely named one owner, Baltimore Condo, and made a finding that it was liable for the entirety of the work performed by Willes Construction throughout the *entire condominium.* As Baltimore Condo did not own every unit in the condominium, it cannot legally, under § 11–108(b), be held in the "Final Order" to

---

**16.** The record is completely devoid of any evidence that any of the work was authorized by a council of unit owners.

bear the burden, for mechanic's lien purposes, of the entire renovation work done by Willes Construction on the common elements of the condominium.

Furthermore, the language of § 9–105 of the Real Property Article, which governs the **"Filing of claims"** in mechanic's lien actions, states that a petition to establish a mechanic's lien must set forth, *inter alia,* the name and the address of *the owner of the property against which the lien is sought to be established.* Section 9–105(a)(1)(ii); *see also* Md. Rule 12–302(b) (stating that "the complaint shall set forth facts upon which the plaintiff claims entitlement to the lien in the amount specified and shall contain ... the name and address of the owner"). The record before us makes clear that, in both Willes Construction's Initial and Amended Complaint, only Baltimore Condo and SMC, in its capacity as managing agent for Baltimore Condo, were alleged to be owners of the Lexington Towers property. Because RA Trust was shown to have a separate property interest in Lexington Towers, independent from that of Baltimore Condo, Willes Construction's complaints were deficient in that they did not name RA Trust as an owner. We hold that neither Willes Construction's "Notice to Owner or Owner's Agent of Intention to Claim a Lien," nor its Initial or Amended Complaint were sufficient, under the Real Property Article and the Maryland Rules, to validly assert a claim against Lexington Towers, as none of these filings recognized RA Trust's independent ownership interest in the building. Because of our holding on this issue, as we have indicated, it is not necessary to address the remaining issues.

## IV. Conclusion

We hold that a lawful condominium regime existed at the building known as Lexington Towers prior to the renovation project of which Willes Construction worked as a subcontractor and, as such, Willes Construction was required, under § 9–104 of the Real Property Article, to give notice of its intention to file a lien to all individual unit owners before a mechanic's lien could be established as against the entire condominium

building. Because Willes Construction did not notify all the owners of the separate properties but only named Baltimore Condo as an owner, the notice requirement of § 9–104 was not sufficiently met and the circuit court erred in entering an order establishing a mechanic's lien as against the Lexington Towers building.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT WITH INSTRUCTIONS TO ENTER JUDGMENT DENYING THE ESTABLISHMENT OF A LIEN IN THIS CASE; COSTS TO BE PAID BY RESPONDENT.**